Dr. Joseph T. SKEHAN, Plaintiff,

v.

**BOARD OF TRUSTEES OF BLOOMS-
BURG STATE COLLEGE et
al., Defendants.**

Civ. No. 72–644.

United States District Court,
M. D. Pennsylvania.

July 20, 1977.

Bruce J. Terris, Suellen T. Keiner, Eleanor M. Granger, Terris, Needham, Keiner, Black & Hostetler, Washington, D. C., Louise O. Knight, Clement & Knight, Lewisburg, Pa., for plaintiff.

Howard M. Levinson, J. Justin Blewitt, Jr., Dept. of Justice, Harrisburg, Pa., for defendants.

## OPINION

### I. Introduction.

MUIR, District Judge.

Skehan, formerly an Associate Professor at Bloomsburg State College, has brought this action alleging that the Defendants violated his constitutional rights by terminating his employment as a professor at the College in October, 1970 and by failing to renew his contract for the 1971–1972 academic year. The history of this case is set forth in this Court's Opinion of May 18, 1977, 431 F.Supp. 1379. In 1973, this Court found that Skehan's constitutional rights pursuant to the Fourteenth Amendment were violated by his termination as a member of the faculty without a prior hearing. 358 F.Supp. 430 (M.D.Pa.1973). In its opinion of May 18, 1977, this Court concluded that the decision not to renew Skehan's contract for the academic year 1971–1972 without affording him the procedures prescribed by Article 5e[1] of the Statement of Policy of Bloomsburg State College violated the due process clause of the Fourteenth Amendment. The Court also stated in its opinion that the only Defendant from whom Skehan sought monetary damages had acted in good faith and in a reasonable manner and therefore was protected by the doctrine of official immunity as set forth in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The only issues

---

1. 5e conforms to the numbering system in the Statement of Policy. The Article is referred to as 5(e) in the Circuit Court opinion.

remaining in this litigation are whether Skehan is entitled to any equitable relief as the result of the two violations of his constitutional rights, whether his attorneys should be awarded part or all of the $87,288.50 claimed as attorney's fees and whether Skehan should recover expenses and costs from the Defendants. The following are the Court's findings of fact, its discussion of these issues, and its conclusions of law concerning these matters.

## II. Findings of Fact.

1. On October 10, 1972, Plaintiff filed a complaint against the Defendants with a claim that they had violated his constitutional rights by their failure to provide him a hearing prior to his termination on October 17, 1970.

2. One of the statutes under which Plaintiff brought suit was 42 U.S.C. § 1983. (Undisputed)

3. Plaintiff prevailed in this Court in 1973 on his claim that Defendants violated his due process rights by their failure to provide him a hearing prior to his termination. (Undisputed)

4. Plaintiff was represented in these initial proceedings in this Court by Harry Lore. (Undisputed)

5. Plaintiff appealed the decision of this Court of May 9, 1973 to the United States Court of Appeals for the Third Circuit. (Undisputed)

6. Plaintiff prevailed in the Court of Appeals in that the case was remanded to this Court for findings as to whether Defendants had violated his First Amendment and due process rights in the course of their decision not to renew his contract and in that the Court of Appeals upheld this Court's ruling that Plaintiff's due process rights had been violated by Defendants' failure to provide him with a hearing prior to termination.

7. The Court of Appeals also determined that Defendants were immune from liability to Plaintiff in damages because they were engaged in discretionary functions. (Undisputed)

8. Plaintiff was represented in the proceedings in the Court of Appeals in 1973–1974 by Michael H. Gottesman who was assisted by his associate, Dennis D. Clark.

9. Plaintiff filed a petition for a writ of certiorari in 1974 on the issues of sovereign immunity, official immunity and attorneys' fees. (Undisputed)

10. The Supreme Court, which granted Plaintiff's petition for a writ of certiorari, vacated the judgment of the Court of Appeals and remanded for further consideration on the issues of official immunity and attorney's fees.

11. Plaintiff was represented in the proceedings in the Supreme Court in 1974 and 1975 by Bruce J. Terris.

12. Plaintiff prevailed in the Court of Appeals in 1976 in that the Court of Appeals ruled that Plaintiff was entitled to an award of damages if the individual defendants did not meet their burden of proof on official immunity and that Plaintiff was entitled to an award of attorney's fees if Defendants had litigated in bad faith.

13. Michael H. Gottesman and Dennis D. Clark represented Plaintiff in 1975–1976 in the proceedings on remand to the Court of Appeals from the Supreme Court. (Undisputed)

14. Plaintiff prevailed in the proceedings in this Court on remand in 1976 and 1977 in that this Court has determined that Defendants violated Plaintiff's due process rights by failing in the course of their decision not to renew his contract beyond the 1970–1971 academic year to provide him with the procedures to which his contract entitled him.

15. Robert B. Elion and Robert B. Wayne represented Plaintiff initially in proceedings in this Court in 1976 on remand from the Court of Appeals. (Undisputed)

16. After Plaintiff's case was remanded to this Court in 1976, Defendants filed a petition for a writ of certiorari to the Supreme Court on the questions whether the Court of Appeals had ruled correctly on the issues of the sovereign immunity, official

immunity and attorney's fees. (Undisputed)

17. Defendants' petition for a writ of certiorari was denied by the Supreme Court on November 29, 1976.

18. Dennis D. Clark represented plaintiff-respondent before the Supreme Court in response to Defendants' petition for a writ of certiorari. (Undisputed)

19. Bruce J. Terris represented Plaintiff during proceedings in this Court after the withdrawal of Robert B. Elion and Robert B. Wayne as counsel for Plaintiff; associates of Mr. Terris who assisted him during these proceedings were Eleanor M. Granger, Zona F. Hostetler, Nathalie V. Black, Lonnie C. Von Renner, Edward C. Comer and Suellen T. Keiner. (Undisputed)

20. Mr. Terris undertook representation of Plaintiff before this Court in 1976 because passage of the Civil Rights Attorney's Fees Awards Act was imminent and Plaintiff's right to recover attorney's fees under the Act was contingent on Plaintiff prevailing. (Undisputed)

21. Plaintiff claims to have incurred legal expenses, other than the fees and expenses of his attorneys, including the cost of travel to and from conferences with his attorneys and the cost of telephone calls to his attorneys in order to assist them in his case.

22. Plaintiff has submitted an application for an Award of Costs and Attorney's Fees to this Court. (Undisputed)

23. Plaintiff's application was prepared by Bruce J. Terris and his associates Eleanor M. Granger and Peter J. Eglick. (Undisputed)

24. Prior to May 1, 1977, Mr. Terris and his associates conferred with and assembled materials from all of the attorneys who have represented Plaintiff from the time the complaint was filed up to the conclusion of the proceedings in this Court; after May 1, 1977, they prepared the application, researched and prepared a trial brief on the award of attorney's fees, prepared findings of fact and conclusions of law, attended a pre-pretrial conference, and represented Plaintiff at the hearing on the application. (Undisputed)

25. At the present time there is no Committee on Professional Affairs at Bloomsburg State College (BSC).

26. The Statement of Policy of Continuous Employment and Academic Freedom at Bloomsburg State College has been superseded by a collective bargaining agreement between the Association of Pennsylvania State College and University Faculties and the Commonwealth of Pennsylvania.

27. The collective bargaining agreement mentioned in the preceding paragraph went into effect on September 1, 1974, and is in effect at the present time.

28. Defendants were the prevailing party with respect to the venue issue raised in the United States District Court for the Eastern District of Pennsylvania, where this case was originally brought. (Undisputed)

29. Defendants were the prevailing party at the preliminary injunction stage of this case. (Undisputed)

30. This Court has found that Plaintiff was not discharged from his employment at BSC in October of 1970 for reasons violative of the First Amendment. Thus, as to this First Amendment issue, the Defendants are the prevailing parties. (Undisputed)

31. This Court has found that Plaintiff was discharged because of his refusal to follow administrative directives and specific orders from his superiors relating to the scheduling and teaching of classes in the fall of 1970.

32. Plaintiff-Appellant designated the following issues for review by the Court of Appeals:

1) "Having found that plaintiff was wrongfully discharged in mid-term without a proper prior hearing under the Due Process Clause of the Fourteenth Amendment should not the lower Court, having found a contract of employment, awarded plaintiff his salary for the remainder of the academic year, as well as damages for lost salary in the ensuing years, counsel fees and reinstatement?"

2) "Was the suspension and subsequent discharge a nullity, in view of the failure to provide a due process hearing before the body mandated in the college's 'Statement of Policy?'"

3) "Was the plaintiff's dismissal as a college professor grounded upon constitutionally impermissible reasons under the First and Fourteenth Amendments?"

4) "Did the lower Court err in finding that plaintiff disobeyed an administrative directive on class scheduling?"

5) "Is the failure to provide a due process hearing prior to discharge where such is clearly required by the Fourteenth Amendment of the U.S. Constitution as well as the College's regulations, a mere 'technical deprivation' warranting damages in the nominal amount of one dollar?"

6) "Whether the lower Court erred in failing to take judicial notice of the censure report on Bloomsburg by the AAUP and of its own dockets in connection with the suit brought by Professor Maxwell Primack against defendants in connection with his discharge in violation of the First and Fourteenth Amendments?" (Undisputed)

33. Plaintiff-Appellant did not raise in this Court prior to 1976 or in the Court of Appeals the issue as to whether the decision not to renew Plaintiff after the 1970–1971 academic year was in violation of the First Amendment.

34. Plaintiff-Appellant did not raise in the district court in 1972 or in the Court of Appeals the issue of whether his constitutional rights had been violated by not being afforded the procedures of 5e of the Statement of Policy of Bloomsburg State College.

35. Article 5e provides, in part, that, "[i]f a faculty member of professional (sic) rank, on probationary appointment, alleges that a decision not to reappoint him has been caused by considerations violative of academic freedom, his allegation shall be given preliminary consideration by the Committee on Professional Affairs . ." (Undisputed)

36. Plaintiff did not show by a preponderance of the evidence that his stands concerning campus issues at Bloomsburg State College were a substantial factor in the non-renewal of his contract by either the then President of the college, Nossen, or the Board of Trustees.

37. Assuming arguendo that Plaintiff had shown by a preponderance of the evidence that his protected speech was a substantial factor in the decision not to renew his employment contract, Defendants Nossen and the Board of Trustees have established by a preponderance of the evidence that they would have reached the same decision as to his reemployment even in the absence of the protected conduct.

38. This Court has found that Defendant Nossen acted in good faith in not affording Plaintiff the procedures set forth under Article 5e of the Statement of Policy. Thus, as to this issue of official immunity, defendants are the prevailing party. (Undisputed)

39. This Court has found that Nossen acted in good faith and in a reasonable manner in not affording Plaintiff a due process hearing prior to Plaintiff's termination on October 19, 1970. Thus, as to this issue of official immunity, defendants are the prevailing party. (Undisputed)

40. In its second opinion in this case, the Third Circuit held as follows: "It can hardly be said that on those issues on which the Defendants have thus far prevailed the defense has been maintained in bad faith, vexatiously, wantonly, or for oppressive reasons. Nor can we find evidence of oppressiveness in Defendants' response on appeal to those issues on which Skehan has been successful." (Undisputed)

41. Since this case was remanded by the Third Circuit in June of 1976, Plaintiff has filed with this Court three requests for the production of documents and one set of interrogatories. (Undisputed)

42. Each of the discovery requests identified in the preceding paragraph was accompanied by a motion to reduce time and a brief in support thereof. (Undisputed)

43. This Court denied all of Plaintiff's motions to reduce time in connection with discovery requests. (Undisputed)

44. As to each of the four discovery requests referred to in ¶ 41 above, Plaintiff filed a motion to compel discovery under Rule 37. (Undisputed)

45. This Court denied all four of the Rule 37 Motions filed by Plaintiff. (Undisputed)

46. In connection with one of the Rule 37 motions, this Court, in an opinion filed on November 16, 1976, held as follows: "Except for *pro se* civil rights actions by state prisoners, the Court has not witnessed a more flagrant misuse of the discovery procedures provided by the Federal Rules of Civil Procedure. Discovery, when properly employed, is a worthwhile device for the preparation and fair disposition of cases. However, its continued vitality as a legitimate instrument of legal inquiry is threatened by misuse. The technique of litigation by exhaustion through discovery makes a mockery of the process. If discovery in all cases were conducted as in this particular request, the legal system would collapse under its own weight." (Undisputed)

47. The individual defendants did not act vexatiously or oppressively in the prelitigation stages of this case.

48. The defense of this case has not been pursued in bad faith, or vexatiously, wantonly or oppressively.

49. Plaintiff was a probationary employee with the Department of Economics during his employment at Bloomsburg State College. (Undisputed)

50. The Article 5e issue was not raised in either of the Supreme Court proceedings in this case. (Undisputed)

51. Defendants' motion for Leave to File an Amended Answer Raising the Defense of the Statute of Limitations was granted. (Undisputed)

52. Defendants' Motion to Take Additional Testimony on the Issue of Official Immunity was granted. (Undisputed)

53. Plaintiff's Motion to Take Additional Testimony on His First Amendment Claim was denied. (Undisputed)

## III. Discussion.

Skehan contends that he is entitled to reinstatement as a remedy for the Defendants' violation of his constitutional right to a pretermination hearing. Two competing factors must be considered by the Court in fashioning a remedy in this case. One is that if Skehan's constitutional rights are to be protected, adequate remedies should be afforded him. The other factor is that Skehan bears an extremely large measure of responsibility for the violation of his constitutional right to a pretermination hearing. The Court has set this forth in its findings of fact of May 18, 1977. Skehan's conduct in refusing to teach his classes at assigned times created confusion among his students and caused disrespect for the college administration. The administration repeatedly warned Skehan that action would be taken against him if he did not meet his classes at the assigned times. In spite of these warnings, Skehan refused to comply with the directions of his superiors. As a result, he was suspended on October 9, 1970. Even after suspension, Skehan continued to meet with classes, informing students that they would receive credit for attending courses taught by him despite the fact that the administration advised Skehan's students that they should not attend courses taught by him, and that they would not receive credit for such attendance. As a result of his conduct, Skehan was terminated on October 19, 1970, effective October 17, 1970. The termination brought no peace to the college. Skehan continued to attempt to hold classes. Finally, the college administration applied to the Court of Common Pleas of Columbia County to enjoin Skehan from further disrupting the campus. A consent decree was ultimately entered. To reinstate Skehan with full teaching duties after his blatant disregard for administrative directives would seriously undermine respect for the college administration at Bloomsburg State College, would have the

potential of impairing the college's ability to operate its own affairs and would result in a grave miscarriage of justice.

 Federal court interference with the administrative procedures of state institutions should be kept to a minimum. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Prospective reinstatement is an equitable remedy. The requirements of the law of equitable remedies clearly applies to § 1983. *Gurmankin v. Costanzo*, 556 F.2d 184 (3d Cir. 1977). Equity has traditionally only offered its relief to those who have clean hands. *Precision Instrument Manufacturing Company v. Automotive Maintenance Machinery Company*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Consequently, the clean hands doctrine should in my view be considered when equitable relief is sought pursuant to 42 U.S.C. § 1983. *Brown v. Greer*, 296 F.Supp. 595 (S.D.Miss.1969). The clean hands doctrine bars Skehan from full reinstatement as a faculty member.

 The appropriate remedy in this case is reinstatement of Skehan to the suspended status that he held on October 15, 1970. Because Skehan has not contended that his suspension was invalid, reinstatement of Skehan to the position that he held before the unconstitutional termination is sufficient. *Horton v. Orange County Board of Education*, 464 F.2d 536 (4th Cir. 1972). The Court would have reached this conclusion even if Skehan had acted with clean hands. His conduct only reinforces the Court's view that reinstatement to the status he held on October 15, 1970 is the appropriate remedy. Skehan has not claimed that his suspension violated the United States Constitution. No reason exists to place him in a position superior to that which he possessed when the illegal conduct of the Defendants commenced. Skehan's reinstatement to a suspended status may be ended either by his full reinstatement or a termination. The College will be required to afford him a hearing comporting with due process at which he will have an opportunity to refute any charges relating to his conduct in 1970.

Reinstating Skehan to the status that he held on October 15, 1970 alleviates the disadvantages which, according to the Court of Appeals for the Third Circuit, occur when a public employee is terminated prior to a hearing. *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974). Skehan will be on the payroll and will not be unduly limited in his ability to pursue the hearing remedy. The concern of the Court of Appeals that after an employee is terminated an institution will make substitute teaching arrangements, thus increasing whatever tendency may already exist for the hearing officials to defer to the administration's decision is not present in this case. Any substitute teaching arrangements have already been made and will not be altered by a full reinstatement of Skehan.

 Skehan also maintains that the proper remedy for the failure of Bloomsburg State College to provide him with the administrative procedures of 5e of the Statement of Policy is his reinstatement. Because Skehan has not contended in any proceedings before this Court, or the United States Court of Appeals or the United States Supreme Court that his suspension with pay on October 9, 1970 was illegal, the Court concludes that he should be placed back in the position he held after his suspension and before his termination. In addition, reinstating Skehan to his full status as a faculty member because of the Bloomsburg College's officials' failure to afford him the appropriate procedures before deciding not to renew his employment would also vitiate this Court's determination to limit Skehan's equitable remedies because of his violation of the clean hands doctrine. Full reinstatement is not the required remedy for failure to provide due process prior to a final determination of the renewal of an employment contract. In *Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court concluded that proof of an individual's property interest in continued public employment did not entitle him to reinstatement.

Because the procedures under 5e of the Statement of Policy are no longer in effect at Bloomsburg State College, the Defendants must recreate them for Skehan. He is entitled to those procedures, no more, no less. Establishing special hearing boards as suggested by the Defendants could result in Skehan not being afforded protection equivalent to that provided by 5e. The Court will order that Bloomsburg State College and the other relevant Defendants afford Skehan the first tier of applicable procedures of Article 5e within 90 days. A decision by the Committee on Professional Affairs should be rendered within 30 days of the date on which it completes its proceedings concerning Skehan.

Skehan contends that the Court of Appeals was in error when it ruled that the state Defendants, acting in their official capacities, were protected from an award of damages by sovereign immunity. This Court is bound by the decision of the United States Court of Appeals and therefore will reject this argument.

Next, Skehan seeks $87,288.50 in attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. 94–559 enacted October 19, 1976,[2] from the Defendant Nossen in his individual capacity and from Nossen and the other Defendants in their official capacities as state officials. In order to be entitled to attorney's fees from Nossen in his individual capacity, Skehan must establish that he was the prevailing party in this litigation. Although Skehan did prove by a preponderance of the evidence that Nossen violated his Fourteenth Amendment rights by failing to accord him a hearing prior to termination and by failing to provide him with the procedures contained in 5e of the Statement of Policy of Bloomsburg State College, Nossen showed by a preponderance of the evidence that he had committed these violations without malicious intent to deprive Skehan of his constitutional rights or injure him in any other way and that his actions were reasonable. Because Nossen prevailed on the issues of good faith and the reasonableness of his failure to provide Skehan with a prior termination hearing and the procedures of 5e, Nossen is immune to a damage action by Skehan. Consequently, as to Skehan's claim for damages, Nossen is the prevailing party and is not liable in his personal capacity for attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976.

Even if Skehan were to be viewed as having prevailed against Nossen, this Court would not direct Nossen to pay Skehan's attorney's fees in his individual capacity. The Civil Rights Attorney's Fees Awards Act of 1976 permits the Court to exercise its discretion as to whether to award attorney's fees. Awarding attorney's fees against Nossen in his individual capacity would be grossly unjust. Nossen acted in good faith and in a reasonable manner when he failed to accord Skehan his constitutional rights. To penalize Nossen

---

2. 42 U.S.C.A. § 1988 (1976)

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action, or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

for conduct which was neither malicious nor negligent would violate the standards of common decency. In addition, awarding attorney's fees against Nossen personally after he has prevailed on the official immunity issue would severely undermine the policies which motivated the Supreme Court to fashion this defense. Unlimited personal liability of public officials for attorney's fees pursuant to 42 U.S.C. § 1983 would inhibit public officials from performing their duties in an efficient and prompt manner. *Scheuer v. Rhodes,* 416 U.S. 232, 242, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973). The amount of the attorney's fees requested in this case is so great that requiring a state official to pay it would have the same tendency to cause hesitation in the performance of vital public functions as a damage award. In the absence of express statutory language, this Court will not assume that Congress intended the Civil Rights Attorney's Fees Awards Act to undercut the doctrine of limited official immunity. Consequently, Skehan's claim for attorney's fees from Nossen in his individual capacity will be denied.

Skehan also seeks attorney's fees from the Defendants in their official capacities. In effect, he is attempting to recover attorney's fees from the Commonwealth of Pennsylvania through the state officials whom he has sued. Defendants contend that this claim of attorney's fees from the Commonwealth of Pennsylvania is barred by the Eleventh Amendment of the United States Constitution.[3] Although that amendment appears only to prevent suits against states in federal court brought by citizens from other states or by citizens or subjects of any foreign state, the federal courts have consistently interpreted it to bar actions for monetary damages brought by a citizen of a state against his own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889); *Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975). In *Fitzpa-*

*trick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court concluded that Congress possesses the power pursuant to § 5 of the Fourteenth Amendment to limit the application of the Eleventh Amendment. It is clear that Congress derives the authority to implement the Attorney's Fees Awards Act from the Fourteenth Amendment. The purpose of the Civil Rights Attorney's Fees Awards Act is to compensate counsel who represent prevailing litigants in various claims brought pursuant to several different civil rights statutes. But the Civil Rights Attorney's Fees Awards Act contains no language expressly allowing the recovery of attorney's fees from the states.

In *Fitzpatrick v. Bitzer, supra,* the Plaintiffs sought damages from the State of Connecticut pursuant to Title VII of the Civil Rights Act of 1964. In 1972, Congress amended the language of that statute to permit an employee of a state or political subdivision to sue his or her public employer pursuant to that act. Thus, in *Fitzpatrick,* by concluding that § 5 of the Fourteenth Amendment limited the applicability of the Eleventh Amendment and allowed a state to be held liable for damages, the Supreme Court enforced the specific statutory language of Congress. The Attorney's Fees Awards Act contains no such language authorizing a recovery against a state.

This Court is of the view that Congress must exercise by express and clear language its power to limit the applicability of the Eleventh Amendment. Only two reported decisions have considered the issue of whether a Plaintiff in a § 1983 action can recover attorney's fees from a state pursuant to the Civil Rights Attorney's Fees Awards Act. The entire analysis of this matter presented by the Eighth Circuit in *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977) is as follows:

"Since the Act was passed by Congress under, *inter alia,* the enabling clause of

---

**3.** Amendment XI of the United States Constitution reads:

"The Judicial power of the United States shall not be construed to extend to any suit in

law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

the fourteenth amendment, S.Rep.No.94–1011, 94th Cong., 2d Sess. 5 U.S.Code Cong. & Admin.News, 1976, p. 5908 the award of attorneys' fees is not barred by the eleventh amendment. *Fitzpatrick v. Bitzer* (citation omitted).

The Eighth Circuit does not discuss the need for statutory language indicating the Congressional intent to limit the applicability of the Eleventh Amendment.

■■■ In *Wade v. Mississippi Cooperative Extension Service*, 424 F.Supp. 1242 (N.D.Miss.1976), the Court noted that Congress did not expressly authorize a recovery of attorney's fees from the states in the Civil Rights Attorney's Fees Awards Act as it had expressly authorized a recovery of damages from the states pursuant to Title VII of the 1964 Civil Rights Act. The Court concluded that the legislative history of the Attorney's Fees Act provided the necessary indication of Congressional intent. This Court finds that rationale unpersuasive. In the absence of explicit statutory language subjecting the states to liability for damages and attorney's fees, this Court will not imply a limit to the state's immunity to suit under the Eleventh Amendment. See *Employees of the Department of Health and Welfare v. Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

■■■ Even if the Eleventh Amendment is not a bar to Skehan's claim for attorney's fees against the Commonwealth of Pennsylvania, this Court would not award such fees for the legal work performed concerning termination without a prior termination hearing because in our view it would be unjust in this case. The Court would exercise its discretion pursuant to the Civil Rights Attorney's Fees Awards Act not to award the fees requested by Skehan. As stated above, and in the Court's opinions of May 9, 1973, 358 F.Supp. 430 (M.D.Pa.1973), and May 18, 1977, Skehan's termination on October 19, 1970 by college officials was caused by his failure to meet his classes at assigned times. Skehan's conduct was in my view egregious. To award attorney's fees of $87,288.50 to Skehan would be to place an unconscionable and unjust burden upon the taxpayers of the Commonwealth of Pennsylvania and would penalize the Commonwealth of Pennsylvania and its taxpayers for the attempt of Bloomsburg State College officials to administer its affairs in an orderly and efficient manner.

■■■ This analysis does not apply to a request for attorney's fees for time expended pursuant to the 5e issue. If this Court is found to be in error by the Court of Appeals in its conclusion that the Eleventh Amendment bars Skehan's claim for attorney's fees, the Court believes that Skehan is entitled to attorney's fees on the 5e issue. Because no time was expended on that matter until this case was remanded to this Court from the United States Court of Appeals in July, 1976 any claim for attorney's fees prior to that date would be unjustified.

In the light of the foregoing, Skehan's claim for attorney's fees from the Defendants in their official capacities will be denied.

■■■ Skehan also claims expenses which he allegedly incurred while aiding his attorneys in the preparation of his case. These expenses include the cost of telephone calls to his attorneys and the cost of travelling to confer with his attorneys. Such expenses are not authorized by the Civil Rights Attorney's Fees Awards Act of 1976 and do not come within the definition of costs as that term is used in the Federal Rules of Civil Procedure. Consequently, Skehan's request for expenses will be denied. Because each party was at fault in this case, it seems appropriate that each party shall bear his own costs.

IV. Conclusions of law.

1. Skehan is entitled to reinstatement to the position he had at Bloomsburg State College on October 15, 1970.

2. The clean hands doctrine of equity prevents Skehan from being reinstated to full status as a faculty member of Bloomsburg State College.

3. Skehan is not entitled to recover attorney's fees pursuant to the Civil Rights

Attorney's Fees Awards Act of 1976 on his damage action against Nossen individually because Nossen was the prevailing party on the immunity issue.

4. Skehan's claim for attorney's fees pursuant to the Attorney's Fees Awards Act from the Defendants in their official capacities is barred by the Eleventh Amendment to the United States Constitution and by sovereign immunity.

5. An award of attorney's fees against Nossen individually would be unjust.

6. An award of attorney's fees against the Defendants in their official capacities for failing to afford a hearing prior to the termination of Skehan's employment would be unjust.

7. Skehan is not entitled to attorney's fees from the Defendants as to the issue that his employment contract was not renewed beyond 1970–1971 because of his involvement in campus activities and his expression of views hostile to the Administration of Bloomsburg State College for the reason that the Defendants were the prevailing parties.

8. Skehan is not entitled to expenses.

An appropriate order will be entered.

### ORDER

1. Skehan's claim for attorney's fees and expenses is denied.

2. The Defendants shall reinstate Skehan to the suspended status which he held on October 15, 1970.

3. The Committee on Professional Affairs shall conduct proceedings concerning Skehan's claim that the decision not to renew his employment contract was for reasons violative of academic freedom within 90 days after the date of this Order.

4. A decision by the Committee on Professional Affairs shall be rendered within 30 days of the date it completes the proceedings concerning Skehan.

5. If after the recommendation of the Committee on Professional Affairs has been received, the President of Bloomsburg College expresses his conviction that non-renewal proceedings should begin, he shall notify Skehan by certified mail, return receipt requested, within 10 days of the action of the Committee on Professional Affairs. The notice shall contain the information required by 9b of the Statement of Policy of Bloomsburg College in force in 1970.

6. Skehan shall, if he desires further review of the President's decision, within 10 days of the receipt of the notice from the President request further consideration in a letter to the President containing the information required by 9c of the Statement of Policy of Bloomsburg College in force in 1970.

7. The President of Bloomsburg College shall indicate to Skehan in writing within ten days of the receipt of Skehan's letter whether he reaffirms his decision not to renew Skehan's contract.

8. If thereafter Skehan promptly requests a hearing on non-renewal, it shall be held by the ad hoc hearing committee within 30 days after receipt of the request therefor by Skehan. The members of the ad hoc hearing committee shall be selected according to the requirements of 9d of the Statement of Policy of Bloomsburg College in force in 1970.

9. The Chairman of the ad hoc committee shall present his report to the Board of Trustees of Bloomsburg College within 30 days after the date of the completion of the hearing by the ad hoc committee.

10. The Board of Trustees shall decide whether to renew Skehan's contract within 30 days after the date the Chairman of the ad hoc committee submits his report and shall give Skehan prompt notice of its decision.

11. A pretermination hearing may, at the option of the President of Bloomsburg State College, be held within 30 days after the Board of Trustees determines whether or not to renew Skehan's employment contract or within 30 days after another final decision has been reached on the question of renewal or non-renewal, whichever shall first occur.

12. If no pretermination hearing is conducted within the time period set forth in the preceding paragraph, Skehan shall be reinstated to the position he held on October 7, 1970.

13. Each party shall bear his own costs.