Domenic LUND

v.

John J. AFFLECK.

Doris PALMIERI et al.

v.

John J. AFFLECK et al.

INMATES OF the BOYS' TRAINING SCHOOL

v.

Bradford E. SOUTHWORTH et al.

Civ. A. Nos. 74–36, 74–69 and 4529.

United States District Court,
D. Rhode Island.

Dec. 13, 1977.

William Rutzick, Alden C. Harrington, Rhode Island Legal Services, Providence, R.I., for plaintiffs in 74–36 and 74–69.

J. Peter Doherty, Sp. Asst. Atty. Gen., State of R.I., Providence, R.I., for defendants.

Jean A. Musiker, Rhode Island Legal Services, Providence, R.I., for plaintiffs in 4529.

Forest Avila, Sp. Asst. Atty. Gen., Providence, R.I., for defendant in 4529.

## OPINION

PETTINE, Chief Judge.

The plaintiffs prevailed and have moved for an award of attorneys' fees in these three 42 U.S.C. § 1983 (1970) class actions for declaratory and/or injunctive relief a) by needy unwed mothers and children of Rhode Island to receive welfare benefits when a man, not married to the mother, resided in the household but did not contribute to the support of the children, *Palmieri v. Affleck,* C.A. No. 74–69 (D.R.I. Jan. 7, 1975); b) to establish the right of a pregnant minor child to receive welfare benefits in the same manner as a pregnant adult, *Lund v. Affleck,* 388 F.Supp. 137 (D.R.I. 1975); c) to enjoin the defendants from not complying with the terms of Consent Decrees entered in 1973 dealing with the care and treatment of incarcerated juveniles, *Inmates of the Boys' Training School v. Southworth,* C.A. No. 4529 (D.R.I. Consent Decree entered 1973). All three cases are consolidated in this Opinion for the purpose of determining the plaintiffs' rights to an award of attorneys' fees. In all three cases, plaintiffs were represented by Rhode Island Legal Services.

In *Lund,* the costs assessed as part of the judgment included an award of attorneys' fees. The defendants only appealed the attorneys' fee award; the appeal was remanded by the First Circuit Court of Appeals for further consideration in light of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Since the remand, Congress has passed the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (Supp. December 1976) ("Act"). This statute authorizes the Court, in its discretion, to grant the prevailing party, other than the United States, reasonable attorneys' fees as part of the litigation costs in an action brought under 42 U.S.C. § 1983.

In opposition to the award of any fees the defendants present a three-pronged argument:

(1) the Act does not authorize in any case an award of fees to a legal services program;

(2) if it does, then such an award cannot be made when the judgment in a § 1983 action is founded on a non-constitutional claim;

(3) if an award is proper than the hourly rate at which the fees are to be assessed should be "restricted".

The Court rejects each of the defendants' arguments.

## Conclusions of Law

### 1

*A legal services organization may recover fees pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976.*

██ The quintessence of the defendants' argument is that it is "inconsistent" with the purposes of 42 U.S.C. § 1988 to award fees to federally funded public service organizations since their poor clients are no longer discouraged from vindicating violation of their civil rights by prohibitive attorneys' fees. Unquestionably, in the past, economic barriers prevented indigents from gaining full access to the courts. This inequality in the pragmatic administration of justice was met by the government through the creation of federally funded legal service programs such as the Rhode Island Legal Services. The contribution the young attorneys staffing these offices have made in protecting the rights of groups of less than fully enfranchised persons in conflict with majoritarian tendencies of oppression is a remarkable record of achievement.[1] In the process they have awakened the consciousness of the American people and have added an attractive stimulus to private attorneys to enter a fertile field and be paid for their efforts. Following enervation of rights to attorneys' fees by decisional law, *see Alyeska Pipeline Service Co., supra,* the Congress, through the enactment of section 1988, put to rest any doubts concerning entitlement of fees by private lawyers. The legislative purpose is clear—to encourage compliance with statutes and constitutional mandates. Although both the federally funded organizations and private counsel accomplish the same end, defendants suggest that Congress needed only to codify the right to fees of private attorneys to provide the necessary impetus to the legal community to accomplish its legislative purpose since legal aid lawyers already receive federal funds.

To be sure the litigant pays no fee; nonetheless, the legal aid offices incur costs both in money and expenditure of human resources. Both of these costs might otherwise be used to represent the poor in personal litigation, vitally important to the litigant although without civil rights dimensions. As plaintiffs' counsel argues, "Rhode Island Legal Services cannot represent all the poor people in the state in all their major legal undertakings . . . .. If a major civil rights welfare case is undertaken, many individuals with serious legal problems will go unrepresented." The force of this position cannot be disputed.

---

1. A partial listing of cases successfully tried in Rhode Island are:

| | |
|---|---|
| *Besau v. Affleck* | Constitutional challenge to state welfare residency requirement. |
| *Bowen v. Hackett* | Civil rights action for women's dependency allowances from Department of Employment Security with 11th Amendment issues. |
| *Coalition of Black Leadership v. Cianci* | Police brutality/citizen complaint procedure (pending). |
| *Cole v. Newport Housing Authority* | Civil rights challenge to Housing Authority residency requirement. |
| *Davis v. Robinson* | Challenge to school lunch program. |
| *Giguere v. Affleck* | Food stamps must be made available for purchase more than once a month. |
| *Inmates of the Boys' Training School v. Southworth; et al.* | Civil rights action seeking improved conditions and treatment at Boys Training School (pending). |
| *McClellan v. Commercial Credit* | Due process attack on state attachment procedure. |
| *McClellan v. University Heights* | Federally subsidized housing project's eviction procedures violate due process and First Amendment. |
| *Morris v. Travisono* | Conditions and discipline at the ACI. |
| *Roselli v. Affleck* | State welfare flat grant violated federal regulations. |
| *Unemployed Workers v. Hackett* | Organization has First Amendment right to distribute reading material at DES offices. |

The myriad of government service agencies are not enclaves with unlimited resources, immune from budgetary strictures with concomitant allocation of services. Priorities must be established that may mandate the loss of services in certain areas when complex, time consuming civil rights litigation is undertaken. The award of attorneys' fees can avoid such loss and thus stimulate continued representation of litigants in civil rights actions.

In addition, many other valid reasons that justify an award of attorneys' fees to private counsel are equally applicable to legal aid organizations. These reasons include: "deterring illegal conduct by the losing party and other possible violators"; the "private enforcement pattern [existing] in numerous federal statutes mandating fee awards"; "to induce behavior which courts and legislatures find desirable"; "punishing the losing party for misconduct."[2]

Looking to the statute itself we find its literal reading does not differentiate between plaintiffs according to whether they are represented by a legal services organization or a private attorney.[3] In fact, the legislative history specifically indicates that an organization can qualify for attorneys' fees. In its discussion of the "third principal element of the bill—[entitlement of the prevailing party] to 'reasonable' counsel fees . . . ," the legislature noted that, "Similarly a prevailing party is entitled to counsel fees even if represented by an organization, or if the party is itself an organization." *See Incarcerated Men of Allen County Jail v. Fair*, 507 F.2d 281 (6th Cir. 1974); *Torres v. Sachs*, 69 F.R.D. 343 (S.D. N.Y.1975), aff'd, 538 F.2d 10 (2d Cir. 1976); *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974).

In *Incarcerated Men of Allen County Jail*, supra, the Sixth Circuit answered affirmatively the direct question whether a legal service organization, partially funded through federal grants, could be awarded a fee for representing inmates in a civil rights class action to redress deprivation of alleged constitutional rights:

The fact that appellees' counsel was a legal services organization, partially supported by public funds, is irrelevant in determining whether an award is proper. Legal services organizations do not have unlimited resources to devote to the public interest, and must confine their representation of indigents to the boundaries of their budget. An attorney-fees' award serves its purpose—to prevent worthy claimants from being silenced or stifled because of a lack of legal resources—whether it goes to private or "public" counsel. (Citations omitted). 507 F.2d at 286.

In accord, we conclude that an award of attorneys' fees to Rhode Island Legal Services, a federally funded organization, is appropriate.

*2*

*Attorneys' fees may be recovered pursuant to 42 U.S.C. § 1988, when claims are made under 42 U.S.C. § 1983 and the judgment is founded on a claim other than the constitutional claim.*

The *Lund* and *Palmieri* cases were decided by this Court based on a statutory interpretation of the Social Security Act; the Court found the state law in question was inconsistent with the federal law and had to yield to the conflicting federal law by virtue of the Supremacy Clause of the Constitution. Because the holding rested on statutory interpretation and not a constitutional violation, defendants argue a fee award is improper under 42 U.S.C. § 1988. Defendants contend that plaintiffs merely alleged "a constitutional claim derived from the same factual situation", (Defendants' brief at p. 4.) that did not meet the test of "substantiality" set forth in *Hagans v. La-*

---

**2.** *See,* Attorneys Fees and Legal Aid, 87 Harv. L.Rev. 411, December 1973, for a well written and exhaustive development of this issue. Though published prior to the enactment of the statute at issue it is, nevertheless, viable supportive authority.

**3.** It provides in relevant part: "In any action or proceeding to enforce a provision of 42 U.S.C. § 1983 . . . the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

*vine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) nor was the statutory claim derived from a "common nucleus of operative fact". *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). These two tests control whether a federal court can assume pendent jurisdiction over non-constitutional federal claims under 28 U.S.C. § 1343 (1970) (*Hagans*) and over state claims under 28 U.S.C. § 1331 (1970) (*Gibbs*). Although these tests can be appropriately transferred from their original context of pendent jurisdiction to attorneys' fees, the tests must be applied in light of the congressional purpose behind the Fees Act. Fortunately, Congress anticipated the very issue at bar. Sensitive to the jurisprudential policy of avoiding constitutional decisions, the House Report suggested that fees can be awarded to plaintiffs who prevail on non-constitutional issues if the constitutional issue is "substantial" and the non-constitutional claim arises out of a " 'common nucleus of operative fact' ". H.Rep. 94–1558, at 4, n. 7, 94th Cong., 2d Sess. (1976).

In the instant cases, the plaintiffs asserted that the state policy violated their rights under the Equal Protection clause of the Fourteenth Amendment and conflicted with various provisions of the Social Security Act of 1935, 42 U.S.C. § 601 *et seq.* and with various regulations of the Department of Social and Rehabilitative Services itself. This Court has already made the determination of substantiality necessary under the Fees Act in assuming pendent jurisdiction of the statutory claims under 28 U.S.C. § 1343 (1970) in *Lund.* The Opinion stated:

> Jurisdiction over the Equal Protection claim is conferred on the Court by 28

U.S.C. § 1343. According to the guidelines laid down by the First Circuit in *Randall v. Goldmark,* 495 F.2d 356 (1974), a federal court may assume pendent jurisdiction of the non-constitutional claims unless the constitutional claim is *totally insubstantial.* [Citations omitted.] In the instant case, the defendants concede that the operative effect of their policy is to deny "AFDC" to persons otherwise eligible to receive it solely on the basis of age (under 18 years). A challenge to such a policy can hardly be viewed as entirely frivolous. [Citations omitted.] 388 F.Supp. at 138.

In arguing the contrary, defendants have cavalierly disregarded the Court's own finding that formed the basis for pendent jurisdiction and from which defendant did not appeal. In both *Lund* and *Palmieri,* the constitutional claims were clearly *not* "wholly insubstantial" and the statutory claims were surely of a sort that any diligent attorney would be expected to raise in a single proceeding. *Accord Southeast Legal Defense Group v. Adams,* 436 F.Supp. 891 (D.Or.1977).[4] To hold otherwise would necessarily encourage plaintiffs not to raise meritorious statutory claims and thus defeat the jurisprudential wisdom of preferring statutory to constitutional decisions.

Notably, there is substantial authority that suggests that § 1983 actions [5] lie to redress federal statutory as well as constitutional claims. *Hagans v. Lavine,* 415 U.S. at 535, 94 S.Ct. 1372; *Lynch v. Household Finance Corp.,* 405 U.S. 538, 543 n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Greenwood v. Peacock,* 384 U.S. 808, 829–830, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *Blue v. Craig,* 505 F.2d 830, 834–836 (4th Cir. 1974);

---

**4.** The "substantiality" test is easily satisfied, for it means no more than "not 'wholly insubstantial', 'obviously frivolous', 'plainly unsubstantial' or 'obviously without merit' ". *Southeast Legal Defense ·Group v. Adams,* 436 F.Supp. at 894, *quoting Hagans v. Lavine,* 415 U.S. at 537, 94 S.Ct. 1372 (1974). The plaintiffs satisfy the test that the constitutional and non-constitutional claims arise out of a common nucleus of operative fact if plaintiffs " 'would ordinarily be expected to try them all in one judicial proceeding' ". *Southeast Legal Defense Group v. Adams,* 436 F.Supp. at 894,

*quoting United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1974).

**5.** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to·the party injured in an action of law, suit in equity, or other proper proceeding for redress."

*Gomez v. Florida State Employment Service,* 417 F.2d 569 (5th Cir. 1969). Since the Fees Act provides attorneys' fees "[i]n any action or proceeding to enforce a provision of . . . § 1983 . . .", the Court is empowered to grant fees to parties prevailing on federal statutory claims. Because the discussion in the House Report on the Fees Act may cast some doubt on this interpretation, the Court today rests its holding on the interrelated nature of the claims but notes the substantial weight of authority favoring an expansive reading of § 1983 and the Fees Act.

■ Additionally, the defendants contend that the Eleventh Amendment prohibits the prevailing plaintiffs from receiving attorneys' fees essentially from Rhode Island via claims against state officials. In support, defendants cite *Skehan v. Board of Trustees of Bloomsberg State College,* 436 F.Supp. 657 (M.D.Pa.1977) wherein the court held such a claim is barred by the Eleventh Amendment. It stated:

> This Court is of the view that Congress must exercise by clear language its power to limit the applicability of the Eleventh Amendment . . . in the absence of explicit statutory language subjecting the states to liability for damages and attorney's fees, this Court will not imply a limit to the state's immunity to suit under the Eleventh Amendment. See *Employees of Department of Health and Welfare v. Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). *Id.* at 666.

In *Skehan* the court distinguished *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), in which the Supreme Court found congressional authority to limit application of the Eleventh Amendment in § section 5 [6] of the Fourteenth Amendment. The Pennsylvania district court reasoned that the *Fitzpatrick* case was not applicable in *Skehan* because the earlier case involved an attorney's fee statute, Title VII, of the 1964 Civil Rights Act that included specific statutory language authorizing fee awards. Clearly, the *Fitzpatrick* decision, not the *Skehan* decision, is applicable to the 1976 Fees Act.

Several courts, including the First Circuit, have held that the Eleventh Amendment does not bar the award of attorney's fees against state officials, *e. g., Martinez Rodriguez v. Jiminez,* 551 F.2d 877 (1st Cir. 1977); *Souza v. Travisano,* 512 F.2d 1137, 1140 (1st Cir. 1975); *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977).

In *Jiminez,* a class action challenging conditions of confinement, the First Circuit upheld an attorneys' fee award, stating:

> [W]e are convinced that the award of attorneys' fees is proper under the Civil Rights Attorneys' Fee Award Act of 1976, Pub.L.No. 94–559 (Oct. 19, 1976). This Act permits an award of reasonable attorneys' fees to the prevailing party in an action such as this brought under 42 U.S.C. § 1983. . . .
> The *Finney* court [*Finney v. Hutto,* 548 F.2d 640 (8th Cir. filed January 6, 1977)] also concluded, *id.,* at 742, that an award of attorneys' fees proper under the Act was not barred by the eleventh amendment, following the analysis in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455, 96 S.Ct. 2666, 49 L.Ed.2d 614 (filed June 28, 1976). We are in complete agreement with the above conclusions of the *Finney* court and the reasons stated in support thereof. The award of attorneys' fees presently contested is accordingly proper under the Civil Rights Attorney's Fees Awards Act of 1976 and is not barred by the eleventh amendment. 551 F.2d at 878–79.

*See, Wade v. Mississippi Cooperative Extension Service,* 424 F.Supp. 1242 (N.D.Miss. 1976). *Cf. Chavez-Salido v. Cabell,* 427 F.Supp. 158, 173 (C.D.Cal.1977). We conclude the *Jiminez* case is dispositive of the Eleventh Amendment claim.

3

*A legal service organization should not receive attorneys' fees at a reduced rate if it receives it at all.*

■ The defendants postulate that "since Legal Services attorneys are full-time salaried employees, any fee generated by civil rights litigation should be considered a

---

6. "The Congress shall have power to enforce this article by appropriate legislation."

windfall" and contrary to the purpose of the statute. The purpose of the statute is to provide fees similar to those in other complex litigation that are adequate "to attract competent counsel, but which do not produce windfalls to attorneys." Senate Report No. 94–1011, 94th Cong., 2d Sess. 1976 at 6; U.S.Code Cong. & Admin.News 1976, p. 5913.

Defendants' argument is not persuasive. This Court cannot conclude that an award of an attorney's fee to a legal aid office[7] can be termed a "windfall," that is, an unexpected financial advantage, or more bluntly stated, as the defendants insinuate, an unwarranted bonanza when added to the funds appropriated by the government to maintain the legal services offices. This argument has no more force in this context than in defendants' argument that legal services attorneys should receive no fee awards at all, *supra*. The receipt of such fees by the legal services office serves the governmental purpose as recited, *supra; see Incarcerated Men of Allen County Jail v. Fair*, 507 F.2d 281 (6th Cir. 1974). In enumerating the factors a district court must consider to determine an "adequate" award under the 1976 Act, the First Circuit did not include whether the attorney has received compensation from a collateral source. *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977). Although "excessive" fees through duplication of effort or performance of non-legal tasks by lawyers is prohibited, the Court essentially directed an evaluation of the complexity of the case, time spent to the preclusion of other employment, ability of counsel, results, customary fees, and other factors. The factors enumerated suggest that the prohibition against "excessive" fees is primarily to avoid overtaxing the losing parties.

Having concluded that the defendants' position on all grounds is untenable, the Court will now consider the amount of the fee award.

## THE FEE AWARD

The teachings of *King v. Greenblatt, supra*, and *Souza v. Southworth*, 564 F.2d 609 (1st Cir. 1977) are the controlling precedents which must guide the Court in computing a reasonable fee award.

In *King*, the First Circuit set forth the standards to be used when computing a fee award under 42 U.S.C. § 1988. The Court adopted the twelve factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which case was cited with approval in the legislative history of the Fees Act:

> 1) the time and labor required; 2) the novelty and difficulty of the question presented; 3) the skill required to perform the legal services; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.

*King v. Greenblatt*, 560 F.2d at 1026–27, *describing Johnson*, 488 F.2d at 717–19.

All of these criteria need not be considered in the instant case. "[T]he time required" has been stipulated and filed; thus, the number of hours claimed by plaintiffs' counsel should not be further reduced because of any alleged duplication of effort or unnecessary use of counsel in non-legal work; "the experience, reputation and ability of the attorney" is "readily concede[d] to [be of] high caliber". Defendants' Post Hearing Reply Memorandum, *Inmates of the Boys' Training School v. Bradford Southworth, et al.* The remaining factors are considered individually herein.

> *The novelty and difficulty of the question presented; the undesirability of the case and the skill required to perform the legal services.*

This Court's experience in the many public issue cases invoking its equitable powers

---

7. There can be no question that the fee goes to the office and not the attorney.

to enjoin certain state practices, leads to the inescapable conclusion that the political forces, both legislative and executive, mount vigorous opposition. Vituperations, born of sheer political considerations or sincere convictions, are not uncommon in this district. Public reaction confronts all the parties daily in the press. Since this Court will speak only through its opinions, and counsel, of necessity, must be circumspect in their remarks, criticisms may become distorted without opportunity to rebut, and weighted unjustly against the Court and the protagonists of the relief being sought.[8] To be sure, there is a segment of the citizenry in favor of actions to redress government wrongs; nonetheless, their silent support cannot compete with the thrusts of the vocal section: the sting of unfair utterances always has its dastardly effect.

This Court can say these cases were undesirable. Although desirability is a question of degree, these cases crossed the threshold.

I find these cases had both novelty and difficulty requiring a high degree of skill for preparation and presentation which these attorneys satisfied to a very high degree. In *Palmieri,* careful legal and factual analysis of United States Supreme Court precedent was required to evaluate the State's position denying factual similarity of the instant case. The complexities involved in these kinds of cases demand the skill of a highly intelligent lawyer. To this Court's knowledge *Lund* was a case of national first impression. *Lund* involved questions of pendent jurisdiction of unconstitutional claims, 28 U.S.C. § 1343; need to reach constitutional challenge, 28 U.S.C. § 2281; class certification and interpretation of the Social Security Act; *Inmates of the Boys' Training School* involved enforcement of a thirty-six page decree of detailed procedures to be followed by the defendants on behalf of a class of juveniles.

*The preclusion of other employment.*

Defendants argue that preclusion of other employment is irrelevant since the plaintiffs' attorneys are government employees and were not denied more lucrative opportunities because of their work in these cases. Of course, that is true; however, the focus should be on the loss of representation to other low-income families who have no other legal resources available to them. As the plaintiffs argue, "[t]he fundings of the Legal Services program does not approach the level necessary to provide adequate representation to the total poor community in the State". When considered together with the other reasons for awarding fees in these cases, this consideration should be no less compelling.

*The customary fee in the community and awards in similar cases.*

Evidence of the customary fee and similar awards was presented from a number of attorneys, some of whom are in private practice and in their private capacity have prosecuted civil rights actions.

These attorneys testified that the customary fee charged by private lawyers for federal litigation ranges from sixty ($60) dollars an hour to a maximum of one hundred ($100) dollars an hour. The only witness to testify to a lower rate was defendants' counsel who stated that when he was a junior associate with a large firm he was billed at a much lower rate and indicated a fee between forty ($40) to fifty ($50) dollars an hour. Defendants' Post Hearing Reply Memorandum, *Inmates,* at p. 3.

*The contingent factor.*

The only fee available in welfare litigation is pursuant to 42 U.S.C. § 1988 which, by its very terms, makes such fee contingent on the success of the litigation. Private attorneys have several options: take the case on a purely contingency basis as provided in the statute and receive payment only if successful, arrange for compensation from the client if unsuccessful, or refuse the case. Only the first option is open to legal services attorneys. They are obligat-

---

**8.** The Court does not list these various comments since they were of such notoriety it hardly believes the litigants will dispute this statement.

ed to represent all the poor and reimbursement is completely contingent on success.

The Court cannot accept the defendants' statement that the real client in these cases is the federal government and the "generality" of taxpaying citizens whose legislative representatives have appropriated funds to vindicate their federal rights. Rather, the real clients are those directly affected by the outcome who the "generality" of citizens, through their representatives, have decided to protect. The appropriation of funds to contract with Legal Services to protect these citizens does not create an agreement which excludes application of congressional considerations for the prosecution of these cases to legal services organizations. Indeed, as set forth *supra*, the fact a legal services organization is involved is irrelevant. *Incarcerated Men of Allen County Jail, supra.*

*The time limitations imposed by the client or circumstances.*

This cannot be evaluated by the Court for lack of sufficient evidence. However, the defendants concede in *Lund* that the results "obtained did benefit the plaintiffs". Defendants' Post Hearing Reply Memorandum, *Lund v. Affleck*, at p. 3. The same is true in *Palmieri* and *Inmates.*

*The nature and length of the professional relationship with the client.*

The nature of the professional relationship does not appear to be relevant in these cases. The Court agrees with the plaintiffs that this consideration is "usually applied to adjust downward a fee where the attorney-client relationship is of long standing and continuing nature and the attorney is receiving compensation from his client for other services performed". Such a relationship cannot exist with legal services attorneys who never charge a fee.

Considering all these factors, the ultimate determination remains: what fee should be awarded?

The Court must keep in mind certain language and admonitions of the First Circuit pronounced in *Souza v. Southworth,* *supra*: "The size of the fee award in this case for the work performed before the district court is indeed very high." 564 F.2d at 613 (the award was $60 an hour for 1973 work, $75 an hour for subsequent district court work and $50 an hour for appellate work). In addition, it is impermissible to "multiply the number of billable hours by an artificial 'marketplace' rate with insufficient regard to the significance or complexity of the litigation". *Id.* To avoid this failing, the Court has considered each of the twelve factors suggested in *King* and *Souza.*

If the fee was "indeed very high" in *Souza*, are these cases distinguishable in the application of the *King* criteria? This is difficult to say as to each of the twelve factors excepting "complexity" of the litigation. It does appear to this Court that *Souza*, unlike *Lund*, did not involve the difficult task of interpreting pertinent federal statutes and more difficult decisional law embodying constitutional questions; however, the shadings are not so dramatic as to easily determine the amount to award.

█ In an attempt not to run afoul of *Souza*, the Court reasons that if sixty ($60) dollars an hour for a less complex case than *Lund* was high in 1973, then it is a fair fee for *Lund* in 1974. Increased complexity and the accepted fact that costs have been rising each year justify this conclusion. Therefore, I determine the rate in *Lund* to be sixty ($60) dollars an hour. The Court is mindful that the First Circuit awarded fifty ($50) dollars an hour for appellate work that was for enforcement of the fee. However, fifty dollars is a lesser rate than the appellate court considered reasonable for argument of the substantive case, since "litigation over fees only indirectly benefits" the plaintiff. *Souza v. Southworth,* at 614.

█ *Palmieri*, though novel, seems to this Court to have presented less difficult legal questions and so requires a fee of less than sixty ($60) dollars an hour. I determine the fee in *Palmieri* to be fair at fifty-five ($55) dollars an hour.

■ *Inmates of the Boys' Training School* presents further variations. It involved a motion for relief requesting the Court to enjoin the defendants from not complying with the terms of the Consent Decrees entered in 1973. It was not easy but I cannot say this case presented any greater difficulty than *Palmieri.* True, there was foot dragging by the defendants, a strong monitoring effort by the plaintiffs, and the need to deal with juveniles who, it was argued, could not easily articulate their grievances. This undoubtedly required more general effort but on the other hand less legal cerebrating. I award, in this case, the same fee as in *Palmieri* of fifty-five ($55) dollars an hour.

*Award for Pressing Claim to Attorneys' Fees.*

In conclusion the defendants argue that, "[t]hey successfully challenged [the original hours submitted by the plaintiffs] and won a substantial reduction of the same [and] to allow plaintiffs to claim an award of attorneys' fees for defending a right to an excessive amount of hours is surely not proper." Defendants' Post Hearing Reply Memorandum, *Inmates of the Boys' Training School,* at 10. The victory was by way of stipulations entered into by the parties whereby the original hours claimed by the plaintiffs to have been expended were reduced. (See stipulations filed with records.)

An analogy can be drawn from certain language in the legislative history of the Fees Awards Act: "Moreover, for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." (Citations omitted.) Senate Report No. 94-1011, 94th Congress, 2d Session 1976, U.S. Code Congressional and Administrative News, Vol. 5, at p. 5912. It appears, to this Court, that the same reasoning that applied to determine the prevailing party in the event of settlement of the substantive case should apply to the fees award. Furthermore, as a rule, a stipulation cannot be considered an admission because it is motivated more often by a desire for peace than for truth. I find the plaintiffs are entitled to an award of fees for pressing their claim for such fees.

■ It appears to this Court that *Souza* does not place a fifty ($50) dollar hourly rate ceiling for work to collect attorneys' fees. The case must be considered in its entirety. Here, important legal issues have been raised, the resolution of which will have a striking effect on Rhode Island Legal Services as well as all other such organizations in the Circuit. Considering the preparation, presentation and briefs, fifty-five ($55) dollars an hour, in my opinion, is a fair amount for all work performed by the plaintiffs' attorneys in pressing their claims to attorneys' fees.

Counsel will compute the itemized amounts to be awarded in each case in keeping with this Opinion and submit an order accordingly.