**INCARCERATED MEN OF ALLEN COUNTY JAIL, Plaintiff-Appellee,**

v.

**Edward FAIR, Sheriff of Allen County, et al., Defendants-Appellants.**

**No. 74–1052.**

United States Court of Appeals, Sixth Circuit.

Nov. 13, 1974.

Lawrence S. Huffman, Lima, Ohio, for defendants-appellants.

Frank S. Merritt, Joseph F. Vargyas, R. Michael Frank, Russel A. Kelm, Toledo, Ohio, David A. Little, Lima, Ohio; for plaintiff-appellee.

Before CELEBREZZE, LIVELY and ENGEL, Circuit Judges.

CELEBREZZE, Circuit Judge.

This suit was begun on June 20, 1972, when eleven inmates of the Allen County Jail filed a *pro se* complaint, stating that "Our conditions are unbearable to the point of not serviving [*sic*]." Alle-gations were made of severe overcrowd-ing, lack of blankets and medical care, prevalence of scalp diseases and lice, and lack of sunlight, among other things.

The District Court treated the com-plaint as a class action under 42 U.S.C. § 1983, with jurisdiction founded on 28 U.S.C. § 1343(3), and it appointed Advo-cates for Basic Legal Equality (A.B.L.E.) to represent the inmates. A.B.L.E. filed an amended complaint on August 15, 1972, seeking declaratory and injunctive relief against Sheriff Fair, who is responsible for the Jail's opera-tion, and the three Allen County Com-missioners, who are responsible for the Jail's equipment, structure, and staff. Appellants denied that the Jail's condi-tions violated the inmates' constitutional rights, but after extensive discovery they consented to an order running against "Defendants Fair, Shafer, Townsend, and Thompson, their agents, employees, assigns, successors in office and all those in active concert and participation there-with." 376 F.Supp. 483 (N.D.Ohio 1973). The consent order covered sev-eral aspects of the Jail's operation, in-cluding ventilation, mail censorship, commissary privileges, visiting hours and facilities, jail population, plumb-ing, inmates' personal items, counsel-ing and medical services, and a clas-sification system. The parties could not agree on the need for additional surveil-lance measures, and this issue was tried to the Court. After a hearing, the Dis-trict Court found the present surveillance inadequate and ordered Appellants to in-stall an electronic surveillance system or to hire more guards. A second consent order followed, requiring Appellants to allow inmates awaiting trial a reasonable number of local telephone calls and to hold a due process hearing before an inmate could be placed in solitary con-finement.

On July 24, 1973, A.B.L.E. filed a re-quest for attorney fees, attaching an af-fidavit detailing the time spent on the case. Appellants did not file an op-posing memorandum. The District Court entered an order which awarded

A.B.L.E. $2,000 in attorney fees for 134 hours of work. The award was "taxed as costs against both defendant Sheriff Fair and defendant Allen County." Appellants object to this award.

There are two basic questions before us: whether an equitable basis exists for an attorney fees' award to A.B.L.E., and against whom and in what manner an award may be assessed. Because of the increasing frequency of cases such as this, we feel it necessary to treat these issues fully, so as to resolve confusion and to set forth the proper considerations for district courts to take into account in deciding whether and in what manner to assess attorney fees against local defendants in suits to enforce civil rights under § 1983.

The first issue is whether an equitable basis exists for an attorney fees' award, leaving aside the question of who should pay the assessment. There are two elements to this problem: · whether this case lies within an exception to the "American Rule" against awards of attorney fees and whether A.B.L.E. is a proper recipient of an attorney fees' award, notwithstanding its partial public subsidy.

■ The "American Rule" is that "attorney's fees are not ordinarily recoverable in the absence óf a statute or enforceable contract providing therefor." Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). This general rule was recently reaffirmed by the Supreme Court, in the context of ordinary commercial litigation. F. D. Rich Co., Inc. v. Industrial Lumber Co., Inc., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed. 2d 703 (1974).

Persons who ·have vindicated public interests through § 1983 litigation, however, have been awarded attorney fees under several exceptions to the general rule, all of which rest on the traditional equitable powers of the federal courts to shift litigation expenses from one party to another.

■ One exception is that "attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." F. D. Rich Co., Inc., 417 U.S. at 129, 94 S.Ct. at 2165. See Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Milburn v. Huecker, 500 F.2d 1279, 1282 (6th Cir. 1974); Gates v. Collier, 489 F.2d 298 (5th Cir. 1973); Sims v. Amos, 340 F.Supp. 691, 694 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972); McEnteggart v. Cataldo, 451 F.2d 1109, 1112 (1st Cir. 1971). The basis for a "bad faith" award is punitive, as it serves to deter and punish unwarranted personal conduct, both before and during litigation.

■ A second exception is that a successful party will be reimbursed for his legal fees when his litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among [the members of the class]." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393–394, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970). See Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882); Milburn v. Huecker, 500 F.2d 1279, 1282 (6th Cir. 1974). The rationale for the "common benefit" exception is the desire to spread litigation costs among all who benefit from litigation undertaken by only a few.

■ A third exception, which has recently become well established, is that one party may be ordered to pay the legal fees of another who has acted as a "private attorney general." When private litigants vindicate a strong public policy and provide widespread public benefit through their efforts, attorney

fees should be paid by the adverse party. *See* Taylor v. Perini, 503 F.2d 899 (6th Cir. 1974); Bradley v. School Board, 416 U.S. 696, 94 S.Ct. 2006 n. 25, 40 L.Ed.2d 476 (1974), rev'g, 472 F.2d 318, 330–331 (4th Cir. 1972); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Wilderness Society v. Morton, 495 F.2d 1026 (D.C.Cir. 1974) (*en banc*) cert. granted, ── U.S. ──, 95 S.Ct. 39, 42 L.Ed.2d 47 (Oct. 15, 1974); Natural Resources Council v. Environmental Protection Agency, 484 F.2d 1331, 1333 (1st Cir. 1973); Calnetics Corp. v. Volkswagen of America, Inc., 353 F.Supp. 1219 (C.D.Cal.1973); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972); N.A.A.C.P. v. Allen, 340 F.Supp. 703, 710 (M.D.Ala.1972); La Raza Unida v. Volpe, 57 F.R.D. 94, 98 (N.D.Cal.1972); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).[1] The rationale for the "private attorney general" exception is that worthy claimants should not be discouraged from asserting rights embodying important public interests because of a lack of financial resources. Newman v. Piggie Park Enterprises, Inc., 390 U.S. at 402, 88 S.Ct. 964; Stolberg v. Trustees for State Colleges, 474 F.2d 485, 489–491 (2d Cir. 1973). Since someone must bear the cost of litigation, it is better that the adverse party do so, even though he may not have acted in bad faith. Otherwise, the "private attorney general" would be penalized by the significant cost of litigation for furthering important public interests through his individual suit. Without re-imbursement for attorney fees, private litigants often could not protect the rights the law grants them. There should be no price tag on the enjoyment of constitutionally guaranteed freedoms. See Sims v. Amos, 340 F.Supp. 691, 694 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972).

 ▇ No finding of bad faith is before us. Rather, the District Court seems to have grounded the award on the "common benefit" and "private attorney general" exceptions. Although we have doubts about the precise applicability of the "common benefit" rationale,[2] we agree that an equitable basis exists for an award. As the District Court stated,

> The Court concludes that the interests of justice require the award to plaintiffs of reasonable attorney's fees for services of *Able* connected with this case. Plaintiffs, through their suit, have sought to redress the alleged deprivation of constitutional rights of all inmates in the Allen County Jail. Although there has been no finding of liability on the part of the defendants because the parties agreed to an order of the Court disposing of most of the contested matters, plaintiffs have nonetheless substantially benefited all inmates of the Allen County Jail by insuring the protection of numerous constitutional rights through the orders of this Court affecting the Allen County Jail filed in connection with this case. The litigation at issue has not only benefited the present inmates of the jail but also all future inmates of the facility. Since all members of the general public in

---

1. *See* Note, "Awarding Attorneys' Fees to the 'Private Attorney General': Judicial Green Light to Private Litigation in the Public Interest," 24 Hast.L.J. 733 (1973); Note, "Allowance of Attorney Fees in Civil Rights Litigation Where the Action is not Based on a Statute Providing for an Award of Attorney Fees," 41 U.Cin.L.Rev. 405 (1972).

2. The most basic doubt is that the award may not be spread among those who will actually benefit from the award. It is a stretch of the judicial imagination to construe the benefited class as all citizens of Allen County, and it is merely an assumption that an award against Sheriff Fair will actually be paid out of the pockets of the County's citizens. Other courts have expressed doubts about the applicability of the "common benefit" rationale in this type of case. *See* La Raza Unida, *supra*; Brewer v. School Board, 456 F.2d 943 (4th Cir.), cert. denied, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136, 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149 (1972).

Allen County and all other persons subject to the jurisdiction of the Allen County courts and law enforcement agencies are potential subjects for incarceration in the Allen County Jail, the constitutional rights of the general public have been vindicated and protected by the litigation of these plaintiffs. The Court, therefore, believes that this is a proper case for the award of reasonable attorney's fees. The award of attorney's fees in cases like this one assures that the vindication of public constitutional rights need not depend upon the financial resources of the particular individuals who seek to secure those rights. *Able* has performed an important public service for those who are, or ever will be, confined in the Allen County Jail and the public which has benefited thereby should bear the financial responsibility for the litigation securing constitutional rights.

This reasoning supports an award under the "private attorney general" rationale, since Appellees' litigation served the public interest by vindicating the strong public policies favoring the protection of constitutional rights. We uphold the propriety of an award on this ground. Indeed, in the circumstances of this case the award is better described as "part of the effective remedy a court should fashion to encourage public-minded suits, . . . and to carry out congressional policy." Sims v. Amos, 340 F.Supp. at 694. *See* Knight v. Auciello, 453 F.2d 852 (1st Cir. 1973); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).

█ Appellant's second argument that the award is improper is based on the contention that an award should not be paid to a legal services organization which is partially funded through federal grants and which has as its purpose the vindication of public interests. In short, an award is not necessary to encourage A.B.L.E. to bring this type of suit. *See* Ross v. Goshi, 351 F.Supp. 949 (D.Haw.1972).

The fact that Appellees' counsel was a legal services organization, partially supported by public funds, is irrelevant in determining whether an award is proper. Legal services organizations do not have unlimited resources to devote to the public interest and must confine their representation of indigents to the boundaries of their budgets.[3] An attorney fees' award serves its purpose—to prevent worthy claimants from being silenced or stifled because of a lack of legal resources—whether it goes to private or "public" counsel.[4] Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); Jordan v. Fusari, 496 F.2d 646 (2d Cir. 1974); Fairley v. Patterson, 493 F.2d 598 (5th Cir. 1974); Hoitt v. Vitek, 497 F.2d 598 (1st Cir. 1974); Wilderness Society v. Morton, 495 F.2d 1026 (D.C.Cir. 1974) (*en banc*), cert. granted, —— U.S. ——, 95 S.Ct. 39, 42 L.Ed.2d 47 (Oct. 15, 1974); Lea v. Cone Mills Corp., 438 F. 2d 86 (4th Cir. 1971).

Given that attorney fees may properly be awarded to A.B.L.E., the second basic question is against whom and in what manner they should be assessed.

The District Court awarded a total of $2,000 in attorney fees "against both Sheriff Fair as an individual and Allen County." The District Court made no finding that Sheriff Fair had engaged in bad faith, and it did not explain why the three County Commissioners were not held for the award.

█ When an individual has engaged in bad faith before or during litigation, an award of attorney fees against him "individually" is proper. Whether he is reimbursed by his employer or insurance

3. *See generally*, Hearings Before the Subcomm. on Representation of Citizen Interests of the Senate Comm. on the Judiciary, 93d Cong., 1st Sess., Parts 3 and 4 (1973).

4. *See* Note, "Awards of Attorney's Fees to Legal Aid Offices," 87 Harv.L.Rev. 411 (1973).

company is of no concern to the court assessing an award on "bad faith" grounds.

In this case, however, no finding of bad faith is before us, and the District Court stated in making the award that "the public which has benefited thereby should bear the financial responsibility" for Appellees' suit. Furthermore, the injunctions were drawn against Appellants in their official capacities, as they were made to run against the defendants, "their agents, employees, assigns, successors in office, and all those in active concert or participation therewith." It is clear, in short, that the District Court did not intend to reach the individual assets of Sheriff Fair but meant the award to be satisfied out of public funds.[5]

■ Appellants invoke their "sovereign immunity" as a bar to the award. The Eleventh Amendment, though a bar to awards of attorney fees that will be satisfied out of a state's treasury, Jordon v. Gilligan, 500 F.2d 701 (6th Cir. 1974), is not a bar to an award that may be satisfied out of a county's treasury. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). See Edelman v. Jordan, 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, there is no constitutional bar to a federal court's awarding attorney fees against a county and its officials.

■ There is a statutory bar within § 1983, however, which prevents direct suits against municipalities under it. The Supreme Court decided in Moor v. County of Alameda, 411 U.S. 693, 710, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), that a county may not be directly sued under § 1983. See also City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Making Allen County directly liable for an attorney fees' award, then,

may not rest on § 1983 liability, since the District Court had no jurisdiction over the County under that statute. One other possible ground to hold the County directly liable might be a state claim that the County is vicariously liable for the good faith actions of its officials in the performance of their duties. This was one justification for the award in La Raza Unida v. Volpe, 57 F.R.D. 94, 102 n. 11, supplementing 337 F.Supp. 221 (N.D.Cal.1972), aff'd, 488 F.2d 559 (9th Cir. 1973) (without discussion of attorney fees). Since no state claim was raised below, we may not now consider whether the award may stand against Allen County on such a pendent state ground. See Moor v. County of Alameda, 411 U.S. at 710–717, 93 S.Ct. 1785. In the absence of a finding that an award against Allen County is justified under § 1983 or under Ohio law, the award against Allen County may not stand. Since the award against Allen County may have been in lieu of an award against the County Commissioners, it is proper to remand for consideration of an award against them, and the entire award will be subject to reconsideration by the District Court.

■ An award against Sheriff Fair is proper under § 1983. Jurisdiction exists over him, and he has been held liable in this litigation. As a means of effectuating its equitable decree, the District Court had the discretion to award attorney fees against him, to be paid out of public funds under his control. See Gates v. Collier, 489 F.2d 209, 302–303 (5th Cir. 1973); Brewer v. School Board of Norfolk, 456 F.2d 943 (4th Cir.), cert. denied, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136, 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149 (1972).

We distinguish our conclusion as to county officials from our holding that state officials may not be assessed attorney fees when it is clear that the fees will be paid out of a state treasury, Jor-

5. We need not, therefore, consider the scope of Appellant Fair's possible qualified immunity under Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), even assuming *arguendo* that immunity is an issue in considering whether an award of attorney fees is proper in conjunction with equitable relief.

don v. Gilligan, 500 F.2d 701 (6th Cir. 1974), on two basic grounds.

First, we held in *Jordon* that the Eleventh Amendment is "a limitation of federal judicial power, that is, on the constitutional grant of jurisdiction to the federal courts." 500 F.2d at 706. The Eleventh Amendment is based on the *sovereignty* of states and leaves to them the choice of submitting to federal court jurisdiction in certain instances. As pointed out above, on the other hand, counties do not enjoy the absolute protection of the Eleventh Amendment. Counties may be directly suable under the general grant of federal question jurisdiction, 28 U.S.C. § 1331, for instance. City of Kenosha v. Bruno, 412 U.S. at 513–514, 516, 93 S.Ct. 2222 (Brennan, J., concurring, joined by Marshall, J.).[6] There is no equation between the Eleventh Amendment's broad immunization of states from federal court jurisdiction and the limited statutory exclusion of municipalities from § 1983 jurisdiction.

▮ Second, whereas the Eleventh Amendment broadly protects sovereign state treasuries from involuntary federal court assessments, Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the exclusion of municipalities from § 1983 jurisdiction was based largely on a fear that municipal liability for *damage* awards against local officials could disrupt the functioning of local government and would impose substantial liability on municipal entities bearing no direct responsibility for the unauthorized acts of their officials. *See* Monroe v. Pape, 365 U.S. at 187–191, 81 S.Ct. 473; City of Kenosha v. Bruno, 412 U.S. at 517–520, 93 S.Ct. 2222 (Appendix to Opinion of Douglas, J., dissenting in part). Congress sought to personalize liability for damages under § 1983 and to leave the question of reimbursement for damage awards against state officials to state law and municipal discretion.

▮ A federal court may, however, award *equitable* relief against local officials, even though it will have a severe impact on local governmental funds, without infringing the policies behind § 1983. *See* Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Northcross v. Board of Education, 489 F.2d 19 (6th Cir. 1973). For instance, although back payments of illegally withheld benefits may not be awarded against state officials under the Eleventh Amendment, *Edelman, supra,* back pay awards have been assessed against municipal agencies under § 1983, on the ground that they are "an integral part of the equitable remedy of injunctive reinstatement." Harkless v. Sweeny Indep. School District, 427 F.2d 319, 324 (5th Cir. 1970). We find that the attorney fees' award here is part of the equitable remedy against local officials and that its payment out of local funds does not infringe Congressional policy embodied in § 1983, just as the requirement that Allen County fund the improvements in the Jail as envisioned in the injunctions against Appellants is a proper exercise of a federal court's jurisdiction.

▮ Given an equitable basis for an award and the absence of a constitutional immunity for Allen County's officials, the basic question resolves itself to this: what is equitable. This decision is largely within the District Court's discretion, to be exercised with a "practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." (footnotes omitted) Brown v. Board of Education, 349 U.S. at 300, 75 S.Ct. at 756. *See* Bowles v. Skaggs, 151 F.2d 817, 820 (6th Cir. 1945). We remand to the District Court for reconsideration of against whom and in what manner the award is to be assessed, and for proper findings and conclusions, which are necessary to our proper review of its final order. *See* Taylor v. Perini, 503 F.2d 899 (6th Cir.

6. *See* Note, "The Supreme Court, 1972 Term," 87 Harv.L.Rev. 261–63 (1973).

1974); Milburn v. Huecker, 500 F.2d 1279 (6th Cir. 1974).

In its reconsideration, the District Court will want to take into account many factors. *See, e. g.,* Hall v. Cole, 412 U.S. 1, 9 n. 13, 15 n. 23, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) (effect of award on defendants' "ability to operate effectively"); Hill v. Franklin County Board of Education, 390 F.2d 583 (6th Cir. 1968) (defendant's good faith in implementing decree); Wyatt v. Stickney, 344 F.Supp. 387, 409–410 (M.D.Ala.1972), and United States v. Gray, 319 F.Supp. 871 (D.R.I.1970) (reasonableness of fee). We mention one particular consideration. If an official is held in his official capacity, and if the purpose of an award is to spread litigation costs among the public, we believe that the proper procedure is ordinarily to draw an order against the official so that the award will be paid out of the public funds under his control. Thus, if half the source of the conditions which the consent order sought to correct is attributable to the Sheriff's operation of the Jail, and half is traceable to poor equipment and staffing, for which the County Commissioners are responsible, it seems equitable to make half the award run against the Sheriff, to be satisfied out of funds allocated to operate the Jail, and half against the County Commissioners, to be paid out of accounts for the Jail. Not only will this method make the remedy fit the violation, Milliken v. Bradley, 418 U.S. 717, 750, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), but it will charge the proper accounts for the expenses involved, so that the expenses of the Jail will be shown to include legal fees paid to persons who were forced into litigation by conditions which had deteriorated beyond acceptability.

The decision of the District Court granting attorney fees is vacated. The cause is remanded, with direction that further proceedings be held consistent with this opinion.