**Lou J. D'IORIO**

v.

**COUNTY OF DELAWARE and Faith Ryan Whittlesey, Charles C. Keeler and William A. Spingler, Members of the County Council of the County of Delaware, and Frank T. Hazel, District Attorney for the County of Delaware.**

**Civ. A. No. 77–1241.**

United States District Court,
E. D. Pennsylvania.

Feb. 22, 1978.

**52.** *See also Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

Jack Brian, Richard, Brian, DiSanti & Hamilton, Upper Darby, Pa., for plaintiff.

D. Michael Emuryan, William J. Reese, Asst. County Sol., County of Delaware, Media, Pa., for defendants.

## ADJUDICATION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff has brought this civil rights action pursuant to 42 U.S.C. § 1983 asserting that he has been wrongfully dismissed from his employment as a county detective by the defendants and requesting equitable relief and damages. Plaintiff avers that the procedures by which his employment was terminated were arbitrary and capricious, lacked procedural due process, and thus were violative of his rights guaranteed by the Fourteenth Amendment to the United States Constitution. Defendants have filed motions to dismiss and a final hearing was held on April 22, 1977. Based upon the evidence elicited at the hearing I make the following findings and conclusions.

## I. FINDINGS OF FACT:

1. Plaintiff was employed by the District Attorney's office of Delaware County ("County") on March 1, 1970, pursuant to an oral contract. Plaintiff was assigned to the Criminal Investigation Division ("C.I.D.") as a county detective. D'Iorio was hired by Rocco Urella, then head of the C.I.D., and was placed on probationary status for three months. After this probationary period, plaintiff was informed by Urella that he was a permanent employee of the County.

2. Plaintiff remained in this position as a county detective until February 27, 1976, when he was dismissed by defendant Frank T. Hazel, District Attorney for the County. The reason given by defendant Hazel for plaintiff's dismissal was that a photograph of plaintiff was discovered in the possession of two individuals, who were known to have extensive criminal records, during the course of a drug raid conducted by other county, state and federal agents. Defendant Hazel stated that he believed discovery of this photograph placed the District Attorney's office in a compromising position and adversely affected the relationship between his office and other law enforcement agencies.

3. On February 26, 1976, Hazel called D'Iorio to a meeting in order to afford plaintiff an opportunity to explain the circumstances surrounding the photograph. Before defendant Hazel terminated plaintiff's employment on February 27, 1976, plaintiff requested and was denied a hearing.

4. On February 27, 1976, defendants Whittlesey, Keeler and Spingler were members of the County Council of the County of Delaware ("Council"). These members of Council took no action before plaintiff was terminated and have not officially approved the action taken by defendant Hazel.

5. Since his termination, D'Iorio has worked sporadically and has had substantial difficulty in securing new employment.

6. By referendum in May, 1975, the voters of the County adopted a Home Rule Charter ("Charter") to become effective January 5, 1976. Section 1211(b) of the Charter provides:

"All employees of the county on December 31, 1975, except those holding offices abolished by this charter, shall continue in employment, at rates of compensation during the year 1976 not lower than their salary levels existing on December 31, 1975, until succeeded or removed by action of Council."

The Charter also requires that Council approve and enact a County Administrative Code ("Administrative Code") no later than December 31, 1976. This Administrative Code should include procedures for implementing a merit employment system. Charter, § 1002. At the time plaintiff was fired from his position, the Administrative Code was not in existence.

7. Section 503 of the Charter provides that the District Attorney shall appoint and supervise the employees of the C.I.D., including county detectives. This section does not specify that the District Attorney has the power to discharge county detectives. Section 1014 enumerates positions which are exempted from the merit procedures; county detectives are not included in that exemption.

8. The reason for plaintiff's dismissal has been widely circulated in the community, including articles appearing in the *Philadelphia Inquirer* of March 7, 1976, and the *Philadelphia Magazine* of July, 1976. On March 29, 1976, defendant Hazel detailed the reason for Mr. D'Iorio's removal in a letter to the Unemployment Compensation Supervisor of the Bureau of Employment Security.

9. Before instituting this federal action, plaintiff filed suit in state court in which he claimed wrongful discharge and demanded money damages. Plaintiff has voluntarily discontinued that action.

## II. DISCUSSION:

Plaintiff asserts that his dismissal violates the Fourteenth Amendment in that: (1) the procedures employed were arbitrary and capricious; (2) the procedures lacked

234

procedural due process; and (3) that termination was pursuant to action not by Council, but rather by defendant Hazel, who lacked authority to dismiss plaintiff. Plaintiff seeks to have any reference to his discharge expunged from his employment record, to be reinstated to his position, to be awarded back pay, to enjoin the defendants from removing him in the future without affording him minimal procedural due process and to be awarded damages.

Plaintiff claims that defendants' actions have resulted in a deprivation of both a property interest and a liberty interest. He asserts his property interest arises from the Charter, which provides for a merit system of employment, citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). He asserts his liberty interest has been affected in that his discharge raises a question of his professional competency, thereby placing a moral stigma upon him and adversely affecting his ability to seek new employment in the future, citing *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Defendants deny that any property or liberty interest of plaintiff has been infringed by their action. They assert that plaintiff had no property interest in his job because he was an employee at will and therefore could be dismissed without the procedural protection required by the Fourteenth Amendment. They argue that the merit procedures referred to in the Charter were not applicable to plaintiff because the Administrative Code was not in existence at the time of plaintiff's dismissal. Defendant Hazel further asserts that even if the merit procedures should be retroactively applied, they would not pertain to a dismissal of plaintiff. Instead, Hazel argues that D'Iorio was not "personnel" in a position covered by the Administrative Code because pursuant to § 503(b) of the Charter the District Attorney had sole authority to appoint and supervise county detectives. Defendants deny that any liberty interest of D'Iorio has

been affected by their actions, analogizing his situation to that of the plaintiff in *Roth.*[1] In their motions to dismiss defendants also assert: (1) the County is not a "person" and therefore cannot be sued under 42 U.S.C. § 1983; (2) this court lacks jurisdiction over the claim; (3) the individual defendants are immune from suit under the Supreme Court holding in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); (4) the members of Council are immune from suit because this is a suit against the County; and (5) this court should abstain from reaching the constitutional questions under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

I need not decide whether plaintiff had a property or liberty interest which would require defendants to afford him a hearing before discharge, because I conclude that the failure of Council to authorize plaintiff's dismissal is itself a denial of due process. As to defendants' other contentions in their motions to dismiss, I find they are without merit except for the immunity of the County from suit under 42 U.S.C. § 1983.

### A. IMMUNITY OF THE COUNTY

It is well established that a municipal corporation is not a "person" under 42 U.S.C. § 1983 for the purposes of equitable relief and damages. *City of Kenosha v. Burno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The same immunity has been applied to counties, and therefore I conclude that the County of Delaware must be dismissed. *Moor v. County of Alameda,* 411 U.S. 693, 710, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

### B. JURISDICTION

Defendants assert that this court lacks jurisdiction pursuant to 28 U.S.C.

[1] It is not clear from defendants' briefs whether they assert that plaintiff has no liberty interest because he is a nontenured employee or that their dismissal placed no stigma or disability upon plaintiff in terms of his freedom to secure other employment opportunities.

§ 1343 on the authority of *Mason v. County of Delaware,* 331 F.Supp. 1010 (E.D.Pa. 1971). The court in *Mason* held that there was no jurisdiction to assert property rights rather than personal liberties under 28 U.S.C. § 1343. This position has been rejected explicitly by the Supreme Court in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). I conclude, accordingly, that this court has jurisdiction under § 1343 to hear a claim based upon a denial of public employment.

## C. ABSOLUTE IMMUNITY OF DEFENDANT HAZEL UNDER IMBLER v. PACHTMAN

Defendant Hazel asserts that he is immune from liability under the Supreme Court's ruling in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), in which the Court held that a state prosecutor, while acting in his official duties associated with the judicial phase of the criminal process, is absolutely immune from civil suits seeking damages under 42 U.S.C. § 1983. Hazel argues that, since at the time of the alleged deprivation he was acting in his official capacity as District Attorney, he cannot be held liable for damages. I conclude that *Imbler* does not immunize him from the relief requested in this action.

The application of the *Imbler* immunity to Hazel raises an issue not addressed by the Supreme Court. *Imbler* extended immunity to prosecutors while they are performing "quasi-judicial" functions that are an "integral part of the judicial process." *Id.* at 430, 96 S.Ct. at 995. The Court explicitly did not rule upon the question whether prosecutors have an absolute immunity when performing administrative or investigative activities. In the instant case the act for which immunity is sought, the firing of plaintiff, is not an activity associated with the judicial process, but rather represents action by the prosecutor in his administrative role. Therefore, I must decide whether *Imbler* should extend to this type of activity.

Although the Third Circuit has not taken a position on this question, *Sprague*

*v. Fitzpatrick,* 546 F.2d 560, 564 (3d Cir. 1976), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977), most courts which have faced the issue have held that there is no absolute immunity for prosecutors while performing their investigative or administrative functions. *See, e. g., Briggs v. Goodwin,* C.A. No. 75–1642, 186 U.S.App. D.C. 179, 569 F.2d 10 (D.C.Cir., September 21, 1977); *Boyd v. Adams,* 513 F.2d 83, 86 (7th Cir. 1975); *Guerro v. Mulhearn,* 498 F.2d 1249, 1256 (1st Cir. 1974). I agree with these decisions. The prosecutor's immunity is derived from the absolute immunity afforded judges, an immunity intended to insulate the judicial process from the potential of harassing suits which might interfere with the impartial adjudication of cases before the court. To the extent that prosecutors play an essential role in that process, it is natural that a similar immunity should extend to them. But it is the functional nature of the prosecutor's activities rather than the prosecutor's status which should create this immunity. When prosecutors are acting in roles other than those associated with the court there is no sound policy reason for distinguishing them from other governmental officials because there is no independent justification for immunizing their non-judicial decisions. They should only have a qualified immunity for these functions. *See generally Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

In addition, the qualified as well as the absolute immunity applies only to prosecutors when they are sued in their individual capacity for damages. In this case plaintiff seeks both damages and equitable relief against defendant Hazel in only his official capacity. Consequently, the qualified, good faith immunity is also not available to Hazel. *See, e. g., Gallagher v. Evans,* 536 F.2d 899, 901 (10th Cir. 1976); *Dyson v. Lavery,* 417 F.Supp. 103, 109 (E.D. Va.1976); *Samuel v. University of Pittsburgh,* 375 F.Supp. 1119, 1129–30 (W.D.Pa.), *appeal dismissed,* 506 F.2d 355 (3d Cir. 1974). As the Court noted in *Wood v.*

*Strickland,* 420 U.S. at 319–20, 95 S.Ct. 992, the justification for the good faith defense is the protection of fearless and independent decision-making by public officials when exercising their discretion within the scope of their official duties. The Court concluded that such judgment would be unduly hampered if the private resources of these officials were vulnerable for mistakes made in the exercise of their discretion which were not unreasonable in light of all the circumstances. This protection is unnecessary, though, in a situation where equitable relief is being sought or where any monetary obligation resulting from liability will not fall upon the individual; thus, it is inapplicable to this case.

### D. IMMUNITY OF MEMBERS OF COUNTY COUNCIL

The defendant council members argue that they are immune from suit, citing *Imbler v. Pachtman, supra,* and *Veres v. County of Monroe,* 364 F.Supp. 1327 (E.D.Mich. 1973), aff'd, 542 F.2d 1177 (6th Cir. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). This contention raises extraordinarily intricate and important questions not only of civil rights immunity and relief but also of subject matter jurisdiction itself. To these important questions, these defendants have devoted seven lines in their brief, copied almost verbatim from the brief of defendant Hazel, two of which lines are taken up with the citation of the cases. To characterize this argument as inadequate would be tantamount to describing the distance from Earth to Venus as "pretty far". Nonetheless, because of the importance of these issues and the possibility that I lack subject matter jurisdiction as to some of the claims, I feel compelled to address fully the issues raised by these cases.

Concerning the absolute immunity of officials performing quasi-judicial functions, I fail to see the applicability of *Imbler* to these defendants. It is obvious that they are not prosecutors, and there are no facts

which would suggest that their failure to act in the firing of plaintiff was a "quasi-judicial" function. Assuming, though, that *Imbler* might apply to these defendants, I reject their claim of absolute immunity for the same reasons previously discussed with respect to defendant Hazel.

In citing *Veres v. County of Monroe,* it appears that the defendant Council members are seeking immunity on the ground that the claim for monetary relief against them in their official capacity is in effect a suit against the County, which is not amenable to suit under § 1983. *See Moor v. County of Alameda,* 411 U.S. at 710, 93 S.Ct. 1785. If a court were to conclude that as to this aspect of the case the action was against the County, it would lack subject matter jurisdiction, *Muzquiz v. City of San Antonio,* 528 F.2d 499, 500–01 (5th Cir.) (en banc), appeal pending, 45 U.S.L.W. 3057 (1976), a matter which the court must consider even if not raised by the parties. *City of Kenosha v. Bruno,* 412 U.S. at 511, 93 S.Ct. 2222. After reviewing the case law on both sides of this issue, I reject the argument that I lack jurisdiction to hear a claim seeking recovery of back pay from Council members in their official capacity.[2]

The issue of whether and to what extent officials can be sued in their official capacity under § 1983 has not been definitively resolved. The majority of courts have held that officials can be sued in their official capacity for injunctive and declaratory relief because these officials are "persons" within the meaning of § 1983. *See, e. g., Monell v. Department of Soc. Serv. of City of N. Y.,* 532 F.2d 259, 264 (2nd Cir. 1976), cert. granted, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); *Thurston v. Dekle,* 531 F.2d 1264, 1269 (5th Cir. 1976); *Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d 1201, 1204–06 (4th Cir. 1975); *Incarcerated Men of Allen County Jail v. Fair,* 507 F.2d 281, 287–88 (6th Cir. 1974); *Ybarra v. City of Town of Los Altos Hills,* 503 F.2d 250, 252–53 (9th Cir. 1974). The circuits disagree, however,

---

2. Since I do not find damages are appropriate in this case, it is unnecessary to determine

whether these officials could be liable for other types of monetary relief.

as to whether officials can be sued in their official capacity for equitable monetary relief, e. g., restitution or back pay. *Compare Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d at 1205; *Incarcerated Men of Allen County Jail v. Fair,* 507 F.2d at 287–88 *with Monell v. Department of Soc. Serv. of City of N. Y.,* 532 F.2d at 264–67; *Muzquiz v. City of San Antonio,* 528 F.2d at 500–01.

I recognize, of course, that § 1983 is available only against "persons," but it is not disputed that an official is a person under the meaning of § 1983 and its jurisdictional implementation, 28 U.S.C. § 1343. The issue, therefore, is whether a court should pierce this facial compliance with the requirements of § 1983 on the basis of a conclusion that equitable monetary relief obtained from an official in his official capacity is in effect a judgment against the underlying governmental entity and must be barred for lack of jurisdiction since that entity cannot be sued directly under § 1983. Those courts which have rejected this type of recovery analogize this issue to the construction given the Eleventh Amendment in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman* the Court held that the Eleventh Amendment barred a suit for retroactive welfare payments sought against a state official because the action was in reality a suit against the state since the requested relief would come out of the state treasury and not from the named defendant's resources.

It is clear that the Eleventh Amendment does not bar recoveries against counties, *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, 479 (1977), and therefore the *Edelman* holding does not directly control the scope of § 1983

jurisdiction. Because I conclude that the constitutional immunity granted the states under the Eleventh Amendment differs significantly from the exclusion of municipalities from the reach of § 1983, I will not apply the *Edelman* analysis to § 1983.

I believe it is error to consider the interpretation of the term "person" in § 1983, announced by the Court in *Monroe v. Pape,* 365 U.S. at 187–91, 81 S.Ct. 473, and *City of Kenosha v. Bruno,* 412 U.S. at 511–13, 93 S.Ct. 2222, as creating a true immunity for municipalities. These decisions hold only that a municipality cannot be sued as a named defendant in a § 1983 action regardless of the type of relief sought because of the language and legislative history of § 1983.[3] They represent purely an interpretation of congressional intent, not the application of a constitutional command. The contrast between this holding and the general immunity of the Eleventh Amendment is most apparent in *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), where the Court held that Alameda County was not a "person" under § 1983 and therefore not amenable to suit under that statute, but then went on to find that the county was a "citizen" in the diversity jurisdiction clause, 28 U.S.C. § 1332(a)(1), and therefore amenable to suit under that provision. *Id.* at 717–21, 93 S.Ct. 1785. There is no suggestion in the language or legislative history of § 1983 that the liability of a "person" is limited by a consideration of the impact such a finding might have on the public treasury. While the Court in *Kenosha* held that equitable relief could not be sought against a municipality,[4] it has continued to recognize injunctions issued against public officials under

---

3. In *Monroe* the Court concluded:

 "The response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by . . . [§ 1983] was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them." 365 U.S. at 191, 81 S.Ct. at 486.

4. In *Kenosha,* the Court stated:

 "We find nothing in the legislative history discussed in *Monroe,* or in the language actual-

ly used by Congress, to suggest that the generic word 'person' in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe,* 'Congress did not undertake to bring municipal corporations within the ambit of' § 1983, id., [365 U.S.], at 187, [81 S.Ct. 473], 5 L.Ed.2d 492, they are outside of its ambit for purposes of equitable relief as well as for damages." 412 U.S. at 513, 93 S.Ct. at 2226.

238

§ 1983 even though the governmental entity will be affected. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 725 (1975); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The defendants whose liability is at issue, not the form of relief, should control the jurisdictional question.

■ To the extent that it is necessary to go beyond the requirement of facial compliance with § 1983 to eliminate cases which attempt by subterfuge to bypass the "person" limitation of § 1983 to affix liability upon a municipality, I believe that the policy considerations of Congress in restricting § 1983 do not require an exclusion of claims seeking equitable monetary relief from officials in their official capacity.

Congress limited § 1983 jurisdiction in response to two concerns: (1) the constitutional authority of the federal government to impose liability upon municipalities and (2) the financial implication of holding such entities vicariously liable for *damages* resulting from the unconstitutional acts of its employees.[5] *See Monroe v. Pape,* 365 U.S. at 187–91, 81 S.Ct. 473; *Incarcerated Men of Allen County Jail v. Fair,* 507 F.2d at 288. Since the former concern seems no longer an issue, it is important to compare the attributes of equitable monetary relief with those of damages when sought against officials in their official capacity to determine whether congressional policy would be violated by permitting recovery of the former.

■ Equitable monetary relief differs from damages in three respects: (1) the type of cases where such relief is appropriate; (2) the nature of such relief; and (3) the potential impact on the municipality's treasury resulting from such recoveries. Each distinction supports the conclusion that the former is recoverable under § 1983.

The type of case in which there is an appropriate request for equitable monetary relief (in conjunction with injunctive relief) is not one which is a ruse to sue the municipality-employer. Such relief can be granted only in an action where the defendant-officials wrongfully have caused public funds to be taken or withheld from the plaintiff. The requested monetary relief is intended to restore to plaintiff those monies which were due him or her from the time of the constitutional deprivation until liability is adjudged. Often this relief is ancillary to an injunction ordering the officials to cease the unconstitutional collection or retention of such funds in the future. It is clear that in these cases the defendant officials are not nominal defendants; by action taken in their official capacity they are both responsible for the constitutional deprivation and capable of rectifying the situation. In contrast, damages can arise from any unconstitutional act by a municipal employee. The defendant-employee's conduct does not necessarily involve fiscal matters and he or she may not have any official duties which entail the control of public funds. Where the defendant-officials' conduct is unrelated to the requested relief, a claim for damages is in effect an attempt to hold the municipality-employer vicariously liable.

The nature of the remedy of equitable monetary relief likewise suggests that it is not violative of the congressional policy behind the limitation of § 1983 jurisdiction. It is undisputed that under § 1983 other equitable remedies such as injunctive relief can be granted against public officials in their official capacity even though these remedies might have a substantial impact on the public treasury. *See, e. g., United Farmworkers of Fla. Housing Project, Inc. v. Delray Beach,* 493 F.2d 799, 802 (5th Cir. 1974). Such remedies are intended to prevent, correct or terminate unconstitutional conduct by public officials. Thus, a court could issue an injunction preventing an official from wrongfully withholding monetary benefits. Equitable monetary relief is simply the retroactive application of such an order. This relief differs from a request for damages because it does not seek to

---

**5.** Thus in *Moor* the Court noted, "Congress did not intend, *as a matter of federal law,* to impose vicarious liability on municipalities for violations of federal civil rights by their employees." 411 U.S. at 710 n.27, 93 S.Ct. at 1796 (emphasis in original).

measure the harm done plaintiff (such as consequential damages) but rather it is aimed at effecting the appropriate transfer of governmental benefits. If this retroactive monetary relief were not available, the financial benefits which plaintiff seeks would not be immune from recovery; instead, their availability would be determined by the celerity with which judicial intervention could be obtained. I do not believe that jurisdiction should turn on the timing of a court's decision; the only question should be whether the court has authority to control the distribution of these financial resources. If it has that control, prospective and retroactive equitable relief should be possible.

In contrast, damage relief is not concerned with halting the unconstitutional conduct of public officials but rather is intended to compensate the victim of such conduct for harm done. The funds from which such relief will come are not related to such conduct and no form of equitable relief can reach these financial resources. Consequently, it is reasonable to conclude that the source of those funds (here, the municipality) and not the offending official is the entity being held liable.

Finally, the impact on the public fisc differs markedly when the effects of allowing only equitable monetary relief are compared with the effects of permitting damage relief. In the former, such relief can occur in a limited number of situations and the amount which can be recovered is controlled by the government's actions, i. e., only those amounts which wrongfully have been taken or withheld can be awarded. Since these funds do not rightfully belong to the municipality, it is arguable that they are not even part of the public treasury. Since these funds are subject to prospective recovery, the elimination of retroactive benefits will not substantially improve the financial security of a municipality. The availability of damages, on the other hand, can create much greater liability in two senses: the amount of a recovery cannot be limited by the government, and the number of acts which could result in liability is substantially greater, i. e., the conduct of each public employee could result in damage liability. Consequently, the entire financial resources of a municipality theoretically would be open to such recovery. Barring such relief, therefore, constitutes a significant protection of the public treasury.

▇▇▇ Back pay has all the attributes of equitable monetary relief. The offending conduct, e. g., wrongful dismissal, directly results in the withholding of pay. The recovery of back pay is an integral part of the equitable remedy of reinstatement in that it restores plaintiff to the *status quo* inherent in returning to his or her position. It is not necessarily a measure of the harm imposed on plaintiff as a result of the firing because it does not consider the financial or psychological harm caused by that firing. Hence, it does not differ fundamentally from reinstating the employee's pension rights and seniority. Accordingly, when back pay is included in a remedy of reinstatement, I conclude it is essentially equitable in nature.

▇▇▇▇ Since the justifications for excluding municipalities from § 1983 do not apply to a request for equitable relief such as back pay, I conclude that the exclusion does not require the court to bar such recoveries. As long as the officials being sued are both responsible for a constitutional deprivation and able to implement, in their official capacity, the equitable relief requested, I find that they are proper parties under § 1983 and that I have jurisdiction to hear a claim for back pay as part of a remedy of reinstatement.

### E. ABSTENTION

▇▇▇▇ Defendants argue that this court should abstain from deciding the issues raised in this case on the basis of either *Pullman* abstention, *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or *Younger* equitable restraint, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). I conclude that neither of these doctrines is applicable to this case. *Pullman* abstention is appropriate where a federal constitution-

al issue is raised which is premised on an unsettled question of state law and which may be mooted or avoided by the resolution within state court of the state law issue. In light of my analysis of the due process claim, I conclude that there is no *unclear* question of state law involved because the requirement that there must be Council action in order to discharge plaintiff is clear on the face of the Charter.

 The scope of the application of *Younger* equitable restraint to a civil action is not entirely clear as a result of the Court's decisions in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) and its progeny. *Trainor v. Hernandez*, 431 U.S. 434, 444 n.8, 97 S.Ct. 1911, 1918 n.8, 52 L.Ed.2d 486, 496 n.8 (1977); *Juidice v. Vail*, 430 U.S. 327, 336 n.13, 97 S.Ct. 1211, 1218 n.13, 51 L.Ed.2d 376, 385 n.13 (1977). The Court noted in each of its decisions that it was not holding that the *Younger* doctrine should apply to all civil litigation. Rather it would appear that the Court has mandated *Younger* equitable restraint only in cases where the federal plaintiff is attempting to invalidate a state statute and thereby enjoin a pending state civil proceeding which was initiated by the state against the federal plaintiff and was intended to enforce or vindicate an important state policy. *Trainor v. Hernandez*, 431 U.S. at 443–44, 97 S.Ct. at 1917–18, 52 L.Ed.2d at 495–96. In this case there is no pending state proceeding which has been initiated by the state and in which the constitutional issues raised here could be adjudicated. Therefore, I find the *Younger* doctrine inapplicable.

### F. DENIAL OF DUE PROCESS

To resolve the constitutional question raised in this case it is not necessary to decide whether plaintiff's property interest or liberty interest has been adversely affected, as those terms are used in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The *Roth* line of cases is concerned with due process rights which assure the fairness of a decision by government officials to deprive plaintiff of a property or liberty interest, *i. e.*, whether notice and a hearing are necessary before the government action is taken. These particular procedures are required under this fairness doctrine of the Fourteenth Amendment only when a plaintiff has an interest of a kind which justifies that the affected party have an opportunity to challenge the merits of a governmental decision to terminate or otherwise affect his or her interest. However, such a challenge would be viable only in a situation where the government is constrained to meet some criterion or make certain specified findings in arriving at its decision. In summary, these cases are concerned with the denial of a particular class of procedures and involve only certain types of interests.

For example, in *Roth*, the Court held that in order to establish a property interest in public employment, plaintiffs must demonstrate that they have a non-unilateral expectancy of continuous employment pursuant to a statute, ordinance or implied contract and thus cannot be discharged without cause. The procedural protections of notice and hearing are required so that the tenured employee can challenge the reasons given for his or her dismissal. In contrast, a non-tenured employee has no substantive basis on which to object to the government's dismissal and therefore such procedural protections are superfluous.

However, there is a series of decisions which addresses an entirely different aspect of the Fourteenth Amendment due process clause. These cases are concerned with curtailing arbitrary and capricious action by governmental entities. In particular, they require that procedural regularity be complied with before governmental action is taken, *i. e.*, that the government follow the procedures it has specified by its laws, regulations and customs. Consequently, it is now well established that the breach by the government of its own rules and regulations, in itself, can constitute a violation of the due process clause. *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–69, 74

S.Ct. 499, 98 L.Ed. 681 (1954); *United States v. Leahey*, 434 F.2d 7, 11 (1st Cir. 1970); *United States v. Heffner*, 420 F.2d 809, 811–13 (4th Cir. 1969).

This arbitrariness doctrine applies more broadly than the fairness doctrine previously discussed. It is clear that the government will be held to comply with procedures which it has promulgated even if they are more generous than the Constitution would require. *United States v. Heffner*, 420 F.2d at 812. The doctrine is also not confined to safeguards which assure fair hearing procedures. *United States v. Leahey, supra; Hupart v. Board of Higher Ed. of City of N. Y.*, 420 F.Supp. 1087, 1107 (S.D.N.Y.1976).

However, not every violation of state procedures specified by law or regulation amounts to a denial of due process. Where procedures are established solely for administrative convenience or to promote some governmental goal independent of the protection of the individual whose interests are being affected, there is no constitutional guarantee. *United States v. Leahey*, 434 F.2d at 11. On the other hand, it is not necessary that the affected party demonstrate that the denial of the specified procedures will result in a deprivation of a property interest of a kind which would require a hearing, *e. g.*, a tenured employment position. It is sufficient if plaintiff demonstrates that the government's failure to comply with its own procedures will have a pecuniary impact or result in a denial of a right or privilege which plaintiff otherwise would have. Courts have held that there was a denial of due process when a governmental entity failed to comply with regulations or procedures resulting in: (1) an interference in private non-tenured employment, *Stokes v. Lecce*, 384 F.Supp. 1039, 1048–49 (E.D.Pa.1974); (2) removal from a school honor society, *Warren v. National Ass'n of Secondary School Principals*, 375 F.Supp. 1043, 1048 (N.D.Tex.1974); (3) denial of priority in public housing, *Otero v. New York City Housing Authority*, 344 F.Supp. 737, 745 n.13 (S.D.N.Y.1972); (4) termination of a discretionary federal emergency loan program, *Berends v. Butz*, 357 F.Supp. 143, 151–53 (D.Minn.1973); and (5) denial of admission to a municipal university, *Hupart v. Bd. of Higher Ed. of City of N. Y.*, 420 F.Supp. at 1106–07.

Courts have recognized the application of this arbitrariness doctrine to cases involving non-tenured employment. In *Prince v. Bridges*, 537 F.2d 1269 (4th Cir. 1976), the court concluded that the plaintiff had a property interest in being discharged in accordance with the statutory procedures provided under state law even though the plaintiff was a non-tenured employee. *Id.* at 1272. This concept is implicit in the Supreme Court decision in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), in which the Court found that plaintiff had no property interest in employment in the *Roth* sense, *i. e.*, tenured employment, but noted that the plaintiff had procedural rights according to state statutes which were not violated in that case. *Id.* at 347, 96 S.Ct. 2074. I conclude that the criterion to follow in analyzing the due process claim in this case is similar to that stated by the Court in *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), where the Court noted in a decision reversing the removal of a civil servant:

> "While it is of course true that under the McCarran Rider, the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so, as we have already held, and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them." *Id.* at 388, 77 S.Ct. at 1165.

Applying this arbitrariness doctrine to this case, I conclude that plaintiff has been denied due process of law. Section 1211(b) of the Charter unambiguously states that all employees of the County shall continue in employment for the year 1976 unless removed by action of Council. I conclude that the intent of this provision is to continue Delaware County employees in their employment until the adoption of the Administrative Code, which would imple-

ment the merit procedure required by the Charter. Section 1211, therefore, was designed to protect County employees in that it made them, at a minimum, employees at will of the Council rather than of their immediate supervisor by requiring action by a majority of Council to remove an employee rather than the unilateral action of a single supervisor. Accordingly, I conclude that this section grants D'Iorio a property interest in his employment sufficient to invoke the arbitrariness doctrine and that he thus had a right to continuous employment until the Charter procedure specified in § 1211 was complied with.

I reject defendant Hazel's contention that D'Iorio was an employee at will of the District Attorney. Section 503(c) of the Charter does not specify that the District Attorney could discharge a county detective. I consider this omission significant in light of the language in § 1211. Further supporting plaintiff's argument that only Council could discharge him is section 427(e), which specifies those positions which serve at the pleasure of the Executive Director of the County. County detectives are not included in that section. Since the Charter does not explicitly state that the District Attorney has the power to remove county detectives, § 1211 must control.

### G. RELIEF

Plaintiff seeks both equitable and legal remedies in this action. As part of a permanent injunction enjoining defendants from continuing to violate plaintiff's rights, he requests: (1) expungement from his employment records of any reference to his wrongful termination; (2) reinstatement to his position as county detective with back pay and other privileges which would attach to his status as an employee; and (3) an injunction enjoining defendant from terminating plaintiff at any time in the future by means other than those provided by the Charter, which provisions should include minimal procedural due process rights as guaranteed by the Fourteenth Amendment. Plaintiff further requests that his costs including attorneys' fees be assessed against defendants and that other money damages be awarded. I find that the record is inadequate to grant all the relief requested by plaintiff.

In *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), the Third Circuit held that a denial of procedural due process in an employment situation can justify reinstatement with back pay. *Id.* at 40–41. I find such relief is appropriate here and therefore order that defendants reinstate plaintiff as of the date of this Order and reimburse him for all back pay which he would have received during the period from February 27, 1975, until the date of this Order minus any compensation he received from any other employment during that time period.

Since the Administrative Code should now be in effect, but is not in the record, it would be impossible to determine what procedures now should be employed to terminate a county detective. Therefore, I conclude that an injunction is not appropriate to control future conduct of the defendants concerning possible termination of plaintiff's employment.

I also conclude that the other relief requested can not be granted at this time. Plaintiff did not present evidence to establish any damages which he suffered as a result of his discharge beyond the loss of salary, and therefore I find that no legal relief is required. Concerning the request for expungement of the discharge record and the assessing of costs and attorneys' fees against the defendants, further briefing is necessary and therefore I will defer a decision on these remedies.

### III. CONCLUSIONS OF LAW

1. The County of Delaware is not a "person" under 42 U.S.C. § 1983 and therefore should be dismissed from the suit. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

2. The court has jurisdiction over the officials sued in their official capacity pursuant to 28 U.S.C. § 1343.

3. The individual defendants are not absolutely immune from suit seeking equitable relief under 42 U.S.C. § 1983.

4. It would be inappropriate to abstain in this case under the doctrine announced either in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or in *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

5. Defendant Hazel's dismissal of plaintiff without a hearing constituted a denial of procedural due process for which defendant Hazel and the members of Council are liable in their official capacity.

6. Plaintiff should be reinstated to his position as county detective and the individual officials are liable in their official capacity for back pay from the time of his discharge until the time of this Order minus any compensation he received for other employment during that time period.